Breitel, J.
Following a jury trial in Supreme Court, Queens County, the defendant was on January 12, 1967 convicted of robbery in the first degree and possession of a weapon as a felony. He was sentenced to imprisonment for 15 to 20 years on the robbery count; sentence was suspended on the weapon count. The Appellate Division unanimously affirmed, without opinion.
The main issue on defendant’s appeal is whether the pretrial identification of the defendant was so unfair as to be violative of due process. Since the identification antedated United States v. Wade (388 U. S. 218) and Gilbert v. California (388 U. S. 263) the inquiry is whether “the confrontation * * * was so unnecessarily suggestive and conducive to irreparable mistaken identification that [defendant] was denied due process of law” (Stovall v. Denno, 388 U. S. 293, 301-302; People v. Rivera, 22 N Y 2d 453; People v. Ballott, 20 N Y 2d 600; People v. Brown, 20 N Y 2d 238). Defendant also contends that guilt was not established beyond a reasonable doubt and that the trial court committed a number of trial errors.
*188 The judgment should be affirmed. The prompt identification by one of the witnesses shortly after the criminal event accorded with desirable police practice. Neither this identification nor that by the other eyewitness was the result of a suggestive procedure but instead emanated from the identifying witness. The proof in the case is overwhelming and the alleged trial errors were not consequential or prejudicial.
On October 22, 1964, at approximately 5 or 10 minutes after noon, a loan company office in Queens County was robbed of $579 by an armed lone male.
Regis Murtha, loan manager, George Wise, assistant loan manager, and Joanne Mason, a secretary, were present in the office when a man entered carrying a brown zippered briefcase, open at one end. He was wearing a flat hat, light tan jacket, dark tan corduroy trousers and “ mirror-type ” sunglasses. Murtha, thinking the man to be a customer, approached him from behind the counter. When Murtha came within two or three feet of him the robber withdrew “ a nickel-plated 45 — an Army type 45 ” from his briefcase and said: “ I am only going to take this out - once. I am going to put it right back in.” ‘ ‘ This is a hold-up. Give me your money and nobody will get hurt. ’ ’
Murtha then instructed Miss Mason to give the money to the robber, who put it in his coat pocket and stated: “ Get to the back of the office. Give me a chance to get out of here and I will be on my way.” He then fled.
Mr. Wise had been on the telephone in the rear of the office. He noticed the robber at the counter, saw Miss Mason give him money, and watched him walk out the front door as Murtha and Miss Mason came to the rear. Upon learning of the robbery Wise ran outside, and saw the robber walking down the street. Wise entered a neighboring store seeking, unsuccessfully, assistance. When he came out of the store, the robber had disappeared around a corner. Wise turned the corner, saw the robber 10 or 15 feet away and called, “ hey you.” Receiving no response, Wise called again. This time the robber turned and Wise observed that he was not wearing any sunglasses. He then crossed the street, got into a parked automobile and drove away. Wise, by this time only two feet from the car, *189 noted that it was a 1959 or 1960 black Chevrolet convertible, license plate number QC2250.
Murtha had immediately after the event telephoned the police to report the robbery. He gave the following description of the robber: “A man above five-ten, six feet, neatly dressed, light-skinned colored person.” The police arrived at the crime scene and Murtha, Wise, and Mason, “ all together ” described the robber by a description similar to the telephoned one. The police in short order ascertained that the owner of the Chevrolet, Miss Elizabeth Spraggins, had the day before loaned the car to the defendant who was to make minor repairs. Approximately one hour after the robbery, Patrolman Joseph Lawler arrested defendant at his home. Following a search, $327 in paper money in denominations of twenties, tens, fives and singles were discovered in defendant’s pocket. After defendant was taken to the police station another search disclosed “ Keys and registration to a I960 Chevrolet, registration QC2250 ’ ’. Six blocks from the loan company office Patrolman Lawler found the automobile, parked and locked. He removed a brown zippered briefcase, containing a “Nickel-plated”, “45-calibre automatic pistol.” The pistol was operable and loaded with seven rounds of ammunition.
Following these developments, Murtha was escorted to the police station by two policemen who informed him: “ We have a suspect we think might be the man who committed the robbery.”
At the police station Murtha was taken to a squad room containing about 10 persons: 4 or 5 uniformed police officers; three Negroes, one of whom Murtha knew to be a police officer, the defendant, and another imprisoned in a cage on the other side of the room from where defendant was standing with a uniformed police officer; and a group of 3 or 4 persons, including a local businessman known to Murtha. Murtha had almost crossed the room when “ [a]n officer asked me if I saw anyone in the room that looked like the suspect, the robber; and I looked around and I saw Logan standing over to one side, and I said, ‘ That is the man there. ’ ’ ’ The defendant no longer had a jacket on but was wearing the “ same brown corduroy trousers.” No one placed a hand on the defendant nor placed a coat or sunglasses on him. On a desk, 5 or 10 feet from the *190 defendant, was a gun which Murtha was “certain” was the one used during the robbery. Murtha remained for approximately 30 to 45 minutes in this room with the defendant. Neither Mason nor Wise was brought to the police station.
Murtha made an in-court identification of the defendant, noting, however, that: ‘ ‘ He had a moustache at the time he held us up. Today, I see he doesn’t have one.” He also testified that at the time of the robbery he had been face to face with defendant for 3 to 5 minutes in a well-lighted area 6 feet from a window. Murtha did not recall whether, on reporting the robbery, he had informed the police that defendant had a moustache.
At trial Miss Mason described the robber as ‘ ‘ tall, around six feet, medium build, light-skinned colored Negro man. He wore a hat, like a sports cap. He had sunglasses that he could see through but you couldn’t see through those. He had a jacket on, and under his left arm he was carrying a brown briefcase.” She had failed to notice whether the robber had a moustache or not and she could not “positively” identify anyone in the courtroom.
An in-court identification of defendant was made by Wise, who testified that on the day of the robbery the defendant had worn a moustache. It is unexplained why, on the day of the robbery, Wise had not been asked to identify the defendant. However, in May, 1966 Wise saw the defendant in the spectators ’ area of a courtroom in the Criminal Courts Building when the trial had been scheduled and Wise had been requested to appear. The case was adjourned and Wise was notified to be present on September 19. As he entered the courtroom in September he again saw the defendant, this time in the corridor. The case was again adjourned. Wise testified both on direct and cross-examination to these prior identifications.
The defense was alibi, namely, that defendant was at his bank, a dry cleaners, and at his aunt’s house at or about the time in question. A bank manager identified the defendant’s deposit slip which had been submitted on the day of the robbery. A taxi driver stated he picked defendant up near the bank at 11:45 a.m’ The operator of a dry cleaning store testified that *191 defendant came to her store to pick up some clothes at 12 noon, and defendant’s aunt testified that he brought her clothes from the dry cleaners between 11:30 a.m. and 12:30 p.m. The crime, it will be recalled, occurred 5 or 10 minutes past noon. Defendant did not testify.
It is urged that the pretrial identification at the police station was so unnecessarily suggestive and conducive to an erroneous identification that it violated due process of law (Stovall v. Denno, supra). Therefore, the necessary corollary is that the in-court identification by Murtha should not have been permitted without a showing by the People upon ‘ ‘ clear and convincing evidence ” that it was based on observations of the defendant other than the improper pretrial identification (People v. Ballott, supra, at pp. 606-607).
The test to be used in determining the propriety of the pretrial identification is one of “ fairness ” (Foster v. California, 394 U. S. 440). This “ depends on the totality of the circumstances (Surrounding it” (Stovall v. Denno, supra, at p. 302).
This court in People v. Ballott (20 N Y 2d 600, supra) condemned a pretrial identification held one year after the commission of a robbery. The victim, a white person, who was described as having seen the robber, “ a Negro, wearing a hat and a heavy coat but for a few minutes during a frightening and upsetting episode” (at p. 607), had been permitted to observe the defendant alone in a room in the police station. Moreover, she was able to identify him “ only after he had, at her request, donned a hat and a heavy coat—similar to those worn by the robber—and uttered the words—somewhat like those spoken [during the robbery] ” (at p. 603). On the other hand, in People v. Brown (20 N Y 2d 238, supra) the two defendants, both Negroes, were placed in a room with a white detective, and the victim, also a Negro, was permitted to identify them through a peephole. This identification, conducted 2 or 3 weeks after the larceny, was held not to be so unfair as to vitiate a later in-court identification (cf. People v. Rivera, 22 N Y 2d 453, supra). Of course, in contrast to the events in the Ballott case the victim in the Brown case had been in the company of the thieves for several hours.
*192 Recently, in Biggers v. Tennessee (390 U. S. 404), the Supreme Court affirmed, by an equally divided court, petitioner’s conviction for rape. The victim had been unable to identify the petitioner at trial. The only evidence connecting him to the offense was proof of a pretrial identification made seven months after the crime, when the victim was asked to come to the police station and “.look at a suspect ” (at p. 405). She was seated in a room and the petitioner was brought to the doorway. Only after she heard the petitioner speak, as she requested, did she identify him (compare Foster v. California, supra, where the Supreme Court condemned holding separate lineups with only the defendant participating in both).
This case has none of the vices in the identification process which troubled the court in the Ballott case (supra). Defendant was arrested immediately after the crime, not one year later, when the witness’ memory would be substantially diminished. Most important, the Chevrolet used by the robber was identified and connected with the defendant, and it was in that automobile that the described pistol and briefcase were found. Moreover, defendant was not exhibited as a sole suspect, nor made to don any particular identifying pieces of clothing, nor required to utter the words used by the robber. Although Murtha was told he was going to look at a suspect, this is not in and of itself sufficient to contaminate the identification (Biggers v. Tennessee, supra). Moreover, unlike even the Brown case (supra) where it was held not impermissible to allow a peephole view of Negro defendants in the custody of a white detective, there was one other Negro present who was unknown to Murtha. The fact that the other Negro was imprisoned in the “ cage ” may have made the identification less suggestive, since it is reasonable for Murtha to have expected that the police would restrain their suspect.
The length of time that Murtha was permitted to view the defendant and the display of the pistol are more troublesome. Presumably, permitting Murtha to continue to view the defendant, coupled with the view of the pistol, helped implant the identification in Murtha’s mind. However, Murtha had, only one hour before, viewed the defendant ‘ ‘ face to face ” in a well-lighted office. He identified the defendant as soon as asked and recognized defendant’s trousers as the same worn during the *193 robbery. He testified that he wqs familiar with “ army type ” pistols. Under these circumstances the pretrial identification was not so “unfair” as to violate due process of law. The in-court identification, therefore, was not rendered inadmissible or subject to preliminary inquiry.
The circumstances under which Wise observed defendant prior to his in-court identification do not raise a due process question under Stovall v. Denno (supra) or for that matter under United States v. Wade (supra) or Gilbert v. California (supra). The exclusionary rules were fashioned to deter improper conduct on the part of law enforcement officials which might lead to mistaken identifications (Stovall v. Denno, supra, at p. 297). Here the observation was a mere happenstance unoccasioned by law enforcement officials, and did not lead in all the circumstances to a danger of mistaken identification. Wise, quite on his own, saw and recognized defendant Logan in the courthouse first in a spectator’s section and later in a corridor. Moreover, the other factors in the case, especially the automobile identified by license number, negative the risk of mistaken identification.
There is a striking parallel to this case in People v. Moore (23 N Y 2d 816). In that case, too, there was a station house identification of the defendant Moore without a lineup. But, as here, the identification was made in an hour, more or less, after the crime and, as here, Moore was connected with an automobile, identified by type and even license number immediately after the commission of the crime. Moreover, in the Moore case the identifying witness remained in the station house with the defendants for two hours while in this case Murtha remained in defendant Logan’s presence for only 30 to 45 minutes.
In People v. Pickett (31 A D 2d 1007) there was similarly a station house identification promptly after the commission of the crime. At about 1:40 a.m. of June 18, 1966 a bystander, Goble, saw the two defendants beating one Burch and trying to seize Burch’s wallet. He told the assailants they “ didn’t have to beat the man like that.” “ They just kept on * * * took the wallet * * * and walked away. ’ ’ Then G-oble saw a police car and had the police arrest the defendants a short distance away. After the arrest Goble and Burch walked to the police station some two blocks distant where they remained *194 for about two hours and saw the defendants in custody. Both later identified the defendants at the trial. It was held that the identifications were valid and did not require preliminary inquiry. To the same effect, in a prompt after-the-crime identification, see Russell v. United States (408 F. 2d 1280, cert. den. 395 U. S. 928).
It is quite evident that the Wade-Gilbert standards were not designed to frustrate good police work which produces the prompt or instantaneous and therefore the most reliable identification of culprits. Moreover, when the identification focuses on the defendant, it will be important, most of the time, to analyze whether the focusing is due to suggestive police action or arrangements or, instead, emanates from the witnesses. It is only where the suggestion is, in one form or another, verbally or circumstantially, put to the witness that the procedure is condemned as violative of due process.
Consequently, the identifications in this case are unexceptionable.
As noted earlier, defendant also argues that his guilt was not established beyond a reasonable doubt. There is ample evidence to establish the defendant’s guilt.
The use of the distinctive automobile, identified by license number, and the possession of the pistol were sufficiently connected with the defendant. It was reported that the robber had possessed a “ nickle-plated 45 — an Army type 45 ”. This type of pistol was discovered in a briefcase under the seat of the locked automobile, the very automobile borrowed by defendant and in which he was observed leaving the scene of the crime. The briefcase was identified as similar to the one carried by the robber. Defendant was identified as the robber. This then was sufficient evidence to establish defendant’s possession of the pistol. And the evidence that the pistol was similar to the one used during the robbery was admissible (cf. People v. Miller, 17 N Y 2d 559).
The jury requested that portions of Murtha’s identification testimony be read. This was done. However, not read was a stipulation of the District Attorney that a question and answer read to Murtha on cross-examination was taken from a true copy of the minutes of a prior hearing. Defendant objected to *195 this omission and the jury was recalled and the stipulation read. Shortly afterwards a verdict was returned. Defendant contends that the failure of the trial court initially to permit the full reading of the testimony was prejudicial. The question and answer was as follows: “ Q. Could you see the color of his face? A. Only the sides of his hair.” If there were any error in refusing to read the stipulation initially, the error was corrected by subsequent reading of it. The reading, however, did not occur until after the jury had sent a message that it was ready to render a verdict. This was delayed so that the stipulation could be read to the jury. Defendant’s counsel stated he was satisfied with the subsequent reading, but noted that the reading came too late if the jury had been prepared to render a guilty verdict.
Defendant contends that the Trial Justice improperly marshaled the evidence when he stated: “ Joanne Mason, who was Mr. Martha’s secretary, testified that she handed the money over to the defendant, or to the perpetrator, whom she couldn’t positively identify, at Mr. Murtha’s direction; Mr. Murtha having positively identified the defendant here in this courtroom.” Miss Mason had answered “ Not positively” when asked "is there anyone in this courtroom that you can positively pick out as the person who perpetrated the crime on October 22, 1964.” She also testified that she did not notice whether the robber was wearing a moustache. It appears, therefore, that the Trial Justice erroneously implied that Miss Mason’s testimony was just short of identification. However, in light of the eyewitness testimony of both Murtha and Wise the error may and should be disregarded as harmless (Code Crim. Pro., § 542).
Finally, it is urged that the admission of a Bureau of Criminal Identification photograph taken of defendant at the time of his arrest was prejudicial. This photograph was not used to bolster the identification evidence but rather to establish the defendant’s appearance on October 22, 1964 (compare People v. Sullivan, 5 A D 2d 847, where it was held prejudicial to use a photograph to prove that the complainant identified the defendant prior to trial; People v. Angora, 13 A D 2d 72; Code Crim. Pro., § 393-b). Thus, the mere fact that what is commonly *196 known as a “ mug shot ’ ’ was exhibited to the jury was not error. Patrolman Lawler had testified, without objection, that he had taken the defendant to be photographed.
Accordingly, the judgment of conviction should be affirmed.
Chief Judge Fuld and Judges Burke, Scilepfi, Bergan and Jasen concur.
Judgment affirmed.