**UNITED STATES of America ex rel. Joseph L. VANTERPOOL, Petitioner,**

v.

**Hon. William CAHN, District Attorney, Nassau County, Respondent.**

**No. 70-C-927.**

United States District Court, E. D. New York.

Aug. 5, 1970.

Elliot A. Taikeff, New York City, for petitioner.

Joseph A. De Maro, Asst. Dist. Atty., for respondent.

## MEMORANDUM AND ORDER

JUDD, District Judge.

This petition for habeas corpus presents the question of what consequences flow from holding a pretrial lineup without the presence of defendant's counsel after the decision of United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967). Petitioner seeks to be relieved of his sentence on a conviction for harassment and menacing, and to be protected from trial for another related offense of possession of a dangerous weapon.

### The Facts

Early on a July afternoon two teen-age girls finished their swimming at Jones Beach and walked under the road to Parking Lot 4, to wait for a friend to pick them up. On the parking lot they were accosted by a man of dark complexion, dressed in a bathing suit and a towel. After a few words, he disclosed a gun under his towel, said "this is a stick up" and took one of the girls by the arm and started to pull her toward the bushes that surrounded the parking lot. One car drove into the parking lot and paid no attention but a second car stopped, because the driver sensed something wrong. The man with the gun then walked away, and the driver put the two girls in his car and found a policeman, who made a fruitless search of the area. One of the girls described the culprit as Puerto Rican, and the driver said he was a "Latin type."

The next afternoon about the same time one of the Long Island State Parkway Police found the defendant sitting on a wooden fence near Parking Lot 4, dressed in slacks, shirt and towel (of a different color). Defendant said he was from Canada and was waiting for a friend. He started to run away when other police arrived, but was apprehended and frisked. In the towel around his waist there was concealed a .177 caliber air-pistol, designed to shoot pellets or beebees.

Defendant was taken to the Jones Beach police station, and permitted to telephone his attorney. The policeman identified himself on the telephone, but did not mention any plans for a lineup. The lawyer said he would be there the next morning for the arraignment. He had to be in Ossining that night, and could not see his client before morning. The policeman denied being told not to do anything detrimental to defendant's rights, and the trial court apparently accepted his version.

### The Lineup

Shortly after the lawyer had talked with the defendant, the police gave him Miranda warnings, and obtained his signature to a waiver of rights. It is not contended that the waiver specifically mentioned waiving the presence of counsel at a lineup.

The two girls were then summoned, identified the gun which had been taken from defendant, and were asked to pick him out from a group of four men. The other three in the lineup were off-duty detectives, of Italian descent and dark complexion, also dressed in slacks and sport shirts, and about defendant's height. The girls had no difficulty or hesitancy in identifying defendant as their assailant, and expressed no doubts about the matter. Each man was asked to speak his name, but his identification took place before defendant spoke.

Defendant is a native of Dominica in the British West Indies. He considers himself Negro, but is not black-skinned. Evelyn McAvinue, the girl whose arm he had taken, said all the men in the lineup had dark complexions, and she thought they looked Puerto Rican. The judge noted for the record that defendant did not look negroid, but "approaching between Spanish and Negro."

### The Trial

The District Court Judge conducted a pretrial hearing on defendant's motion to suppress any identification by the witnesses who had observed the lineup. Two police officers, Miss McAvinue, the defendant, and his attorney all testified.

The judge heard oral argument and dictated his decision into the record. He held that identification prior to arraignment was important, even in the defendant's interest, that the lawyer must have known that a lineup was customary, that defendant did not request his lawyer's presence, and "the police went about as far as could be reasonably expected to accord this man all his constitutional rights." Finally, he found that Miss McAvinue's identification was spontaneous and positive, and not the result of any suggestion.

Defendant then waived a jury, and went to trial before the same judge who had conducted the suppression hearing. The two girls identified defendant, and so did Paul McGinnis, the driver who had picked them up. He is a business executive. He testified that he had looked closely at the girl's assailant, though from forty feet away. He had not seen him again until the day of trial three months later, but he was sure of his identification. He was unshaken by extensive cross-examination.

Defendant relied on an alibi. He and two witnesses testified, but there were inconsistencies between the testimony of the two witnesses, and also between their stories and his own account of the day's events.

The court again dictated a decision after hearing argument. He found that Mr. McGinnis was an impressive witness, and confirmed the girls' spontaneous identification. He found that one alibi witness was unreliable, and that the testimony of the other could be reconciled with defendant having been at Jones Beach at the time of the attack. After considering the fact that defendant was found at the same spot with a gun the next day, he found that defendant was guilty "beyond any doubt." After seeing the pre-sentence report, which showed no prior record, the court imposed a sentence of sixty days in jail and a $150 fine.

The charge of possessing a dangerous weapon, on the day after the assault, still awaits trial.

### The Scope of the *Wade* Rule

◼ Defendant was clearly deprived of the right of counsel at the lineup. The practice of inducing a defendant to sign a Miranda waiver after he has talked with counsel is questionable at best. As for a lineup, a man charged with crime does not often realize the importance of having counsel at a pretrial identification. *Cf.* Schantz v. Eyman, 418 F.2d 11, 14 (9th Cir. 1969). The form that was described here did not constitute an "intelligent waiver" of the right to be represented at the lineup. United States v. Wade, *supra*, 388 U.S. at 237, 87 S.Ct. at 1937.

Most reported cases since *Wade* have dealt with lineups which occurred before 1967, and involve only the determination whether confrontation "was so unnecessarily suggestive and conducive to irreparable mistaken identification that he was denied due process of law." Stovall v. Denno, 388 U.S. 293, 301–302, 87 S.Ct. 1967, 1972, 18 L.Ed.2d 1199 (1967).

The *Wade* rule was fashioned as an exclusionary rule "to deter law enforcement authorities from exhibiting an accused to witnesses before trial for identification purposes without notice to and in the absence of counsel." Stovall v. Denno, *supra*, 388 U.S. at 297, 87 S.Ct. at 1970. However, the court in *Stovall* recognized that confrontations for iden-

tification "often have been conducted in the absence of counsel with scrupulous fairness and without prejudice to the accused at trial." (388 U.S. at 299, 87 S. Ct. at 1971).

The *Miranda* rule forbids use of any information obtained as a result of interrogation without proper warnings. Miranda v. Arizona, 384 U.S. 436, 479, 86 S.Ct. 1602, 1630, 16 L.Ed.2d 694 (1966). By analogy, evidence based on a post-*Wade* lineup without counsel should not be permitted at trial. Here in-court identification was all that was introduced at the trial on the merits. Petitioner argues that even this should not have been permitted, since it was tainted by the improper lineup. Effective deterrence of police misconduct might extend to suppressing all identification testimony by a lineup witness, but this might defeat the broad public interest by letting guilty defendants go free.

■ This court construes *Wade* not to prevent all in-court identifications by a witness who has been exposed to an improper pretrial confrontation. The directions at the conclusion of the *Wade* opinion were:

"We therefore think the appropriate procedure to be followed is to vacate the conviction pending a hearing to determine whether the in-court identifications had an independent source, *or whether, in any event,* the introduction of the evidence was harmless error, Chapman v. State of California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705, and for the district court to reinstate the conviction or order a new trial, as may be proper."

(388 U.S. at 242, 87 S.Ct. at 1940—emphasis added).

The same course was followed in Gilbert v. California, 388 U.S. 263, 272, 87 S.Ct. 1951, 1956, 18 L.Ed.2d 1178 (1967).

■■ Here the trial court held a full hearing, and determined that there was an independent source for the girl's identification of defendant. It has been held that defense counsel should be told the description given to the police before the lineup is held. Spriggs v. Wilson, 419 F.2d 759 (D.C.Cir. 1969). Failure to provide such protection, like failure to have counsel present, may be a factor in determining whether there is an adequate independent source for the identification, but it should not result in forbidding any in-court identification. Deterrent exclusionary rules should not always frustrate good police work. People v. Logan, 25 N.Y.2d 184, 194, 303 N.Y.S. 2d 353, 360, 250 N.E.2d 454 (1969).

The court here did not say in so many words that the proof of an independent source was "clear and convincing." *Cf.* United States v. Wade, *supra,* 388 U.S. at 240, 87 S.Ct. at 1939. Nevertheless the whole tenor of the Nassau County judge's opinion is that he was fully satisfied with the validity of the identification. This determination was "fairly supported by the record." 28 U.S.C. § 2254(d) (8).

■ Since there was an independent source for the in-court identification, it is not necessary to consider whether the conduct of the lineup in the absence of counsel was harmless error under the facts in this case.

■ Disregard of a defendant's right to counsel at a lineup may result in inability to use a witness for in-court identification if the several factors described in *Wade* show that the identification may have been the result of suggestion. 388 U.S. at 241, 87 S.Ct. at 1940. This is not such a case.

It is

Ordered that the petition be dismissed.