Nanette Dembitz, J.
The evidence at the juvenile delinquency trial of the 15-year-old respondents showed that one Dr. Gardiner, walking home from a restaurant dinner to his apartment on East 43rd Street in Manhattan at about 1:30 a.m., was assaulted by a group of seven youths. During the assault his pants were ripped down the back and his wallet was taken from one pants pocket as well as paper currency from another; his watch was removed from his wrist; and after he was knocked to the ground he received a kick in the cheek that caused permanent eye impairment. The major question of law raised by the respondents is whether the victim’s identification of them is inadmissible in evidence under the constitutional guarantees of due process of law and *162 against unreasonable searches and seizures. The answer to this question depends on whether evidence should be nullified by a policeman’s mistake in determining the precise moment when his authority to stop respondents ripened into authority to árrest them.
Prompt Identification of Respondents.
Dr. Gardiner identified respondents on the street within 15 minutes of the crime, the police having stopped and detained them five blocks from its scene. Unquestionably, a prompt identification is proper despite its "show-up” character. (People v Morales, 37 NY2d 262, 272; People v Blake, 35 NY2d 331, 336-337; People v Rahming, 26 NY2d 411, 416; People v Logan, 25 NY2d 184, 188: "The prompt identification * * * shortly after the criminal event accorded with desirable police practice;” Kirby v Illinois, 406 US 682, 691; Russell v United States, 408 F2d 1280, 1284, cert den 395 US 928; State v Gastelo, 111 Ariz 450.) Respondents contend, however, that the police acted illegally in stopping respondents; that this illegality taints the identification because it could not have occurred but for their restraint by the police; and that the identification therefore cannot be used against them despite its admissibility under CPL 60.30.
Basis for Street Restraint of Respondents.
Police Officer Ward on anticrime patrol in an unmarked police car received a police radio call that seven black youths fled towards Second Avenue from the scene of an assault and robbery on East 43rd Street. Within five minutes of the call he saw a group of black youths (thereafter found to number eight) on Second Avenue four blocks from the scene of the crime; calling for reinforcement and following them for a block, he then ordered them to stop and stand against a building wall. Within three minutes Dr. Gardiner, the victim, arrived there with other policemen, and identified respondents as three of his assailants. Respondents were then taken to the Police Station.
Officer Ward could reasonably have calculated from the elapsed time and the distance from the scene of the crime that the group he saw was likely to be its perpetrators. (See People v Wilson, 16 AD2d 207, 210; Gastelo, supra, p 460, as to importance of time-distance factor.) Further, Officer Ward *163 testified that during his patrol in and near the area in the preceding hours, he had not noticed any other group on the street of more than two or three people; and it is common knowledge to anyone acquainted with the area of the crime that a group of youths on the street in that vicinity at 1:30 a.m. would be most unusual.
These facts were sufficient to establish the reasonable suspicion necessary for an investigative stop. (See Terry v Ohio, 392 US 1, 22, 23; People v Rivera, 14 NY2d 441, 445; United States v Burgarin-Casas, 484 F2d 853, 855, cert den 414 US 1136: a stop is justified on "founded suspicion”; United States v Ward, 488 F2d 162.) Respondents argue that even if the initial police action be viewed as stop, despite their argument that it constituted an arrest (see below), it was illegal because Officer Ward did not use it for the purpose of questioning respondents in accordance with the "stop-and-frisk” law (CPL 140.50). However, the legal and constitutional power of the police extends to a stop on reasonable suspicion for other legitimate police purposes. (See Adams v Williams, 407 US 143, 146: "A brief stop of a suspicious individual, in order * * * to maintain the status quo momentarily * * * may be most reasonable in the light of the facts known to the officer at the time”; People v Rosemond, 26 NY2d 101, 103-104; People v Green, 80 Mise 2d 626, 631, as to "the right to detain individuals short of arresting them” briefly for a reasonable police purpose; People v Butterly, 25 NY2d 159, 162; Cupp v Murphy, 412 US 291.) Officer Ward could have reasonably inferred from the police radio calls and the time-distance factor that the victim would shortly arrive with assisting police at the location of the stop for the purpose of viewing the suspects. Prompt identification was undoubtedly a proper police purpose (see above), justifying a brief detention; "For the police to have done less would have been misfeasance.” (See People v Singleteary. 35 NY2d 528, 531.)
Stop or Illegal Arrest.
Respondents’ major argument is that Officer Ward arrested them at their initial encounter rather than merely making an investigative street stop, and that such arrest was illegal. Since the circumstances at that time present only a borderline case of probable cause for an arrest, this opinion will assume, in respondents’ favor, that an arrest was justified only after the victim had identified respondents (the identifications con *164 cededly furnished probable cause). Officer Ward who supplied the only evidence as to the time of arrest, first testified that he arrested respondents when he stopped them; he also testified that he then "intended” to arrest them but did not recall when, if ever, he told them they were under arrest.
"The question of precisely when an arrest occurred is one of fact (Sibron v New York, 392 US 40, 67).” (People v Butterly, 25 NY2d 159, 162, supra.) The legality of a police act cannot be judged, either in approving or disapproving it, by the name the police gave or intended to give to it.
In People v Cantor (36 NY2d 106, 112), the court "eschewed the semantic trap of labeling the police action,” choosing instead to determine whether the action was reasonable under the circumstances. People v Martinez (37 NY2d 662, 668-670), in which a gun observed as a result of an illegal stop was held to constitute probable cause for an arrest, is also instructive in that it focused on the factual basis for the police action and its reasonableness (p 670) as well as the good faith of the police (p 669). The question is "whether the intrusion is a reasonable one under the circumstances” (People v Kuhn, 33 NY2d 203, 209). This question must be answered in the affirmative for the initial brief street detention for identification by the victim.
The victim’s identification of respondents is thus admissible because the police action which preceded it was justified by the circumstances. But even assuming the initial intrusion should be classed as an illegal arrest, it seems unjustifiable to extend the exclusionary rule to identifications — a type of evidence to which, so far as research reveals, it has not yet been applied. For, the identification evidence, even if occasioned by an illegal arrest, was not obtained by further police action as in the instance of a search or interrogation. (See Collins v Beto, 348 F2d 823, 835 [Friendly, J. concurring] quoting from Wong Sun v United States, 371 US 471, 487-488:
"’We need not hold that all evidence is "fruit of the poisonous tree” simply because it would not have come to light but for the illegal actions of the police.’”)
Finally, the enforcement of the exclusionary rule would not in the instant case serve its purpose of deterring "willful, or at the very least negligent, conduct” (Michigan v Tucker, 417 US 433, 447; see, also, Brown v Illinois, 422 US 590, 600, n 5). "The distinction between an arrest and an investigatory stop is often difficult to make.” (Gastelo, 111 Ariz 459, 460.) And a *165 policeman must focus on the substance of crimes as defined in the Penal Law, on finding suspects, and on stopping them in a fashion that is effective and physically safe both for them and for him. It would seem irrational to exclude evidence of the instant identification because the police made an incorrect on-the-spot deduction as to whether the initial circumstances presented reasonable suspicion justifying a stop or probable cause justifying an arrest, considering the difficulty even for a court to draw the line between the two. Such a ruling would permit "the criminal to go free because the constable has blundered” (People v Defore, 242 NY 13, 21) in refined legal reasoning, and must be rejected.
Admission or Exclusion of Other Evidence.
After the victim’s identification of respondents concededly furnished probable cause for their arrest, and while respondent Lloyd E. was being transported in the back seat of a police car to the police station, a policeman in the front seat told another sitting beside him that $60 had been taken from Dr. Gardiner. Respondent exclaimed: " — ; it was only $23!” Such an uninvited and unforeseen "voluntary statement” is admissible though the respondent had not been given the Miranda warnings. (Miranda v Arizona, 384 US 436, 478.)
As shown in relation to the admission of the identification evidence, respondent is not entitled to the exclusion of his inculpatory exclamation — an implicit admission against interest — on the basis that his initial street detention was an illegal arrest. Further, even assuming respondent was arrested when he was initially stopped, his physical release and rearrest after probable cause was unequivocally furnished by Dr. Gardiner’s identification of him, would have been purposeless (see Martinez, 37 NY2d 662, 668, supra).
None of the above principles, however, permits the admission of evidence as to a watch seized from one of the group on the street. Petitioner failed to prove that the victim’s identification of his assailants, which supplied probable cause for their arrest and for searches incidental thereto, preceded the seizure.
Weight to be given to Victim’s Identification of Respondents.
Prompt identification being one of the "exempted exigen *166 ties” from the rule against show-ups (see People v Blake, 35 NY2d 331, 336-337), petitioner did not bear the burden of proving that Dr. Gardiner’s in-court identification of respondents was uninfluenced by the on-the-street identification (see Logan, 25 NY2d 184, 193-194, supra). Nevertheless, in evaluating the weight to be accorded the in-court identification as well as the on-the-street identification, consideration must be given to the fact that the latter was made in a show-up. (See United States v Wade, 388 US 218, 229.) «,
The court concludes that neither identification was the result of the suggestiveness of a show-up. An indication that Dr. Gardiner was uninfluenced thereby was his testimony that he failed to identify as one of his assailants the member of the group from whom the police recovered his watch. Dr. Gardiner appeared to be a highly credible witness, scrupulously limiting his incriminating testimony to his precise observations, and his testimony was unshaken and unimpugned under protracted cross-examination.
Chain of Custody of Exhibit.
Respondents’ objection that the chain of custody of an exhibit — Dr. Gardiner’s ripped trousers — was insufficiently established, is without merit. "Practical limitations” in establishing the transfer of an exhibit from hand to hand, must be observed; here there was "nothing to suggest access or tampering or that the evidence was not maintained in accordance with reasonable police procedures.” (People v Connelly, 35 NY2d 171, 175, 176; see, also, People v Russell, 49 AD2d 655; People v Porter, 46 AD2d 307, 311.)
A finding of facts that would constitute first degree assault if committed by an adult is made against each respondent.