■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v ROBERT ADAMS, Appellant.—Judgment, Supreme Court, Bronx County, rendered on September 9, 1977, unanimously affirmed. Concur—Bloom, Lane, Markewich and Ross, JJ.

Sandler, J. P., concurs in a memorandum as follows: I agree that the defendant's conviction should be affirmed. Considered as a whole, the evidence is extremely powerful and leaves little room for doubt as to the defendant's guilt. However, one aspect of the case requires additional comment. The defendant was convicted of participating with two others in a

robbery. Within several hours of the robbery he and two others were arrested, all reasonably believed to have been involved. The three victims were summoned to the police station and brought into an office in which those arrested were being held by police officers. The witnesses identified the defendant and at least one of the other two. Left uncertain in the record is whether or not the third person was also identified and, if so, by whom. Indeed, there is conflicting testimony as to whether a third person was present when the viewing took place. The circumstances surrounding this collective show-up identification could hardly have been more offensively suggestive. In violation of basic, well-established principles, the three witnesses were permitted as a group to view the suspects, thus raising the distinct possibility that an identification by one would influence the judgment of the others. Indeed, in this case, one of the witnesses, whenever asked at the *Wade* hearing or at trial to describe what occurred, invariably responded that another had identified the arrested persons and that he had agreed. Moreover, the joint viewing of several suspects in connection with a crime committed by the equivalent number, presents an even greater danger of misidentification than the classic single person show-up which, as the Supreme Court aptly noted, has been widely condemned. See *Stovall v Denno* (388 US 293, 302). For if it should be the fact that one or more of those viewed in fact participated in the crime but that another exhibited with them did not, there is an obvious danger that a witness accurately recognizing one or more participants might be influenced by the fact of the joint showing to identify the innocent person. The events here described clearly do not fall within the principle of those cases that have sustained a prompt show-up identification shortly after the commission of the crime at or near the scene of the crime or at the station house. (See *People v Logan*, 25 NY2d 184; *People v Moore*, 23 NY2d 816; *People v Pickett*, 31 AD2d 1007.) This identification took place over three hours after the crime had been committed. Nothing in the circumstances suggests that it would not have been feasible within a relatively short time to arrange for an appropriate line-up or at the very least to make arrangements permitting some measure of choice that would have minimized suggestiveness. (Cf. *People v Logan, supra.*) Of course, the test to be applied is whether under all the circumstances there is " 'a very substantial likelihood of irreparable misidentification' * * * Short of that point, such evidence is for the jury to weigh." *(Manson v Brathwaite*, 432 US 98, 116.) The identifying witnesses here all testified that they had an opportunity to observe the robbers over a period of from 5 to 10 minutes. In light of that testimony, I do not disagree with the trial court's conclusion that there was here no such "substantial likelihood of irreparable misidentification" that would require the exclusion of the identification testimony, although it should be noted that at least one of the witnesses testified at trial to a much more limited opportunity to observe. What troubles me here is an increasing sense that the identification procedures disclosed may reflect a developing police tendency, following the relaxation climaxed in *Manson v Brathwaite (supra),* of the more rigorous standards previously advanced by the Supreme Court in the *Wade* trilogy *(United States v Wade,* 388 US 218; *Gilbert v California,* 388 US 263; *Stovall v Denno,* 388 US 293), to lapse back into precisely the kind of objectionable methods that had contributed to the earlier more severe approach. The dangers inherent in what occurred, and variations reflected in other appeals, are two. First, and most important, the procedures used significantly enhance the possibility that an innocent person will be mistakenly identified and convicted. Second, the procedures followed create a very substantial risk

that the prosecution of meritorious cases will be inexcusably and recklessly jeopardized. In this case, it appears that the witnesses had an ample opportunity to observe during the course of the robbery. There is no suggestion, however, that the police in charge of the case were aware of that legally significant circumstance or would have acted any differently if the fact were otherwise. Moreover, the trial record here discloses an impressive body of additional evidence convincingly pointing to the guilt of the defendant. I am aware of no guarantee, however, that this reassuring element will be present in all other cases in which similar untrustworthy and questionable techniques are followed. I think it imperative that responsible police officials and prosecutors act energetically to insure that police officers and others concerned with the identification of suspects in criminal cases become more aware of, and sensitive to, their obligation scrupulously to avoid techniques that are unfairly suggestive. If this is not done, I am convinced that the danger of wrongful convictions will be inexcusably increased and that important meritorious prosecutions will be irresponsibly imperiled.