*514 OPINION OF THE COURT
Gerard E. Delaney, J.
The issue before the court is whether or not, as a matter of law, a defendant may challenge the propriety of an identification process which takes place during the course of his felony hearing and/or latter Grand Jury presentment of charges against him.
As discussed, infra, this court holds that in an appropriate case such proceedings are subject to the same standards of due process "reliability testing” as the traditionally recognized police-arranged confrontations.
Defendant, Timothy Smith, has been jointly indicted with Thomas Smith for the crimes of attempted robbery in the first degree (two counts), attempted robbery in the second degree and criminal possession of a weapon in the fourth degree. On September 27, 1979, at approximately 7:45 p.m., defendants Timothy Smith and Thomas Smith (who are not related) are alleged to have driven up to the drive-in window of a McDonald’s restaurant in Yonkers, New York, displayed a rifle and shotgun and attempted to rob a female employee of restaurant moneys. A fellow employee immediately called the Yonkers police, described the alleged robbers and their vehicle and the two individuals sped away from the restaurant without obtaining any money. A short time later two Yonkers policemen received the description of the incident over their vehicle’s police radio, spotted defendant’s vehicle, gave chase, and saw one of the men in the car with a rifle. Eventually, the police shot out a tire on the pursued vehicle, it stopped and both defendants were arrested. Recovered in their vehicle were a rifle, shotgun and a McDonald’s cheeseburger.
Ms. Woodbury, the McDonald’s employee whom defendants had allegedly attempted to rob, identified codefendant, Thomas Smith, at an in-person showup at Yonkers police headquarters later that evening. The ñrst identification by Ms. Woodbury of Timothy Smith took place in person at the felony hearing in the City Court of Yonkers on October 23, 1979. Both defendants were later identified by photographic show-ups in the Grand Jury on November 21, 1979.
Both identifications of Timothy Smith have been "noticed” by the People pursuant to CPL 710.30 (subd 1). Such identification notice states that:
"During the trial of [this case], the People expect to intro *515 duce the testimony regarding an observation^] of Timothy Smith either at the time or place of the commission of the crime or upon some other occasion relevant to the case, which testimony will be given to a witness * * * who has * * * previously identified the defendant as such. * * *
"in-person at a previous hearing on or about October 23, 1979 by one witness” and, "from a photograph, when said witnesses] appeared before the Grand Jury on or about November 21, 1979 [by two witnesses].”
By serving a notice, the People certainly imply a concession that either of the above two "identifications” are suppressible (cf. CPL 710.30, subd 2; 710.40, subds 2, 3; 710.60) and if improper, a "ground” for suppression under CPL 710.20 (subd 5). However, this court is well aware that, in all cases, including the instant one, the People have argued that such "identifications at Felony Hearings and Grand Jury proceedings are not proper subjects of a motion to suppress, as a matter of law * * * within the ambit of CPL § 710.20 [and] * * * the Wade/Gilbert/Stovall [United States v Wade, 388 US 218; Gilbert v California, 388 US 263; Stovall v Denno, 388 US 293] trilogy of cases.” If such be the People’s position, why serve such CPL 710.30 notice at all? What is indicated in a lack of appellate law directly on point. If an appellate court decides that such "identifications” do fall within the ambit of CPL 710.20 (subd 5) and the People have not served such notice, pursuant to CPL 710.30 (subd 1), the People face exclusion of in-court identification evidence (CPL 710.30, subd 3) and reversal. (Cf. People v Briggs, 38 NY2d 319; People v Slater, 53 AD2d 41.) The only case in which it appears the issue of whether a court appearance may constitute a "showup” identification appears to be People v Ramos (42 NY2d 834; but, see, People v Rivera, 74 AD2d 857).
In Ramos, the People, under direction of the local court, produced a witness at a pretrial Wade hearing who had been subject to no previous pretrial identification procedure during a 10-month interval between the alleged crime and the hearing. The defendant argued, inter alla, that such a procedure was highly suggestive in that no previous identification had taken place; that defendant was the only Puerto Rican in the hearing courtroom, peopled by persons of other ethnic backgrounds and dressed differently, and that there was no independent source for the witnesses’ identification. The Court of Appeals in Ramos (supra), by finding that adequate indepen *516 dont source existed for the witnesses’ identification and noting that no proper objection had been made by the defendant as to the propriety of the procedure, implied, in this court’s view, that without the independant source and with a proper objection such a hearing confrontation may serve to taint a later in-court identification. Indeed, it has recently been held that an improper photo identification conducted during the trial, coupled with a previous improper showup could trigger a necessary hearing for examination of the "reliability” of such in-court identification. (People v Rivera, supra.)
It is the People’s position that "the identification of the accused at the preliminary hearing [and Grand Jury] is not in the category of identifications within the ambit of CPL § 710.20” which reads in the applicable part:
"[u]pan motion of a defendant who * * * claims that improper identification testimony may be offered against him in a criminal action, a court may, under circumstances prescribed in [CPL art 710], order that such evidence be suppressed or excluded upon the ground that it:
"5. Consists of potential testimony regarding an observation of the defendant either at the time or place of the commission of the offense or upon some other occasion relevant to the case, which potential testimony would not be admissible upon the prospective trial of such charge owing to an improperly made previous identiñcation of the defendant by the prospective witness. ” (Emphasis added.)
This court must respectfully disagree with the logic and sweeping generalization of People v Washington (County Ct, Westchester County, Feb. 7, 1980, Couzens, J.) wherein it was stated, inter alla, "[A] judicial identification proceeding where an attorney is present cannot ever be so suggestive [within U. S. Supreme Court guidelines discussed, infra] and thus remains without the Stovall, Neil [v Biggers, 409 US 188] and Manson [v Brathwaite, 432 US 98] parameters so as to trigger the suppression mechanisim of Criminal Procedure Law Article 710 * * * This is so because the prior identification is, as a matter of law, incapable of being so unnecessarily suggestive as to deny the defendant due process of law and give rise to a substantial likelihood of irreparable misidentiñcation.” (People v Washington, supra, at pp 4-5; emphasis added.)
The rationale of Washington is that due process can never be offended by identification "confrontations that are not police arranged or in which the identification is merely confir *517 matory.” (People v Washington, supra, at p 5; for confirmatory identifications see, generally, People v Morales, 37 NY2d 262; cf. People v Logan, 25 NY2d 184; People v Blake, 35 NY2d 331.) This approach elevates the form (and forum) of the identification over its substance and reliability. "' "[D]ue process” unlike some legal rules, is not a technical conception with a fixed content unrelated to time, place and circumstance’ (Anti-Facist Committee v McGrath, 341 US, 123, 162 [Frankfurter, J. concurring]). It embraces fundamental rights and immutable principals of justice * * * and use of the term is but another way of saying that every person’s right to life, liberty and property is to be accorded the shield of inherent and fundamental principals of justice * * * It imposes upon courts the duty to foster ' "that fundamental fairness essential to the very concept of justice” ’ (People v Leyra, 302 NY 353, 364).” (People v Isaacson, 44 NY2d 511, 520; emphasis added.)
In this case, it can hardly be said that Ms. Woodbury’s identification of Timothy Smith at the felony hearing was merely "confirmatory” — she had never identified him subsequent to the alleged crime. "Thus, [her] best view of the defendant may actually [have] be[en] on the occasion of the identification, a view that will tend to supplant the less secure recollection [she] had formed at the time of the crime. If induced by a nonobjective procedure, the result may be an irradicable faulty identification which becomes [her] standard of comparison for all subsequent views * * * The vice to be avoided by the salutary safeguards required to avoid suggested or mistaken identifications generally apply to initial identifications.” (People v Morales, supra, at p 271; emphasis added.)
It also becomes apparent that as Ms. Woodbury also later identified defendant from a photo showup at the Grand Jury, that such may well have been a mere comparison with her first view at the felony hearing, and both should be examined to determine whether an in-court identification would be "reliable” under current guidelines.
The recent case of People v Gissendanner (48 NY2d 543, 552) cited by the People, does not support the proposition that preliminary hearings of Grand Jury identifications are "incapable * * * as a matter of law * * * of being so unnecessarily suggestive as to deny the defendant due process of law”.
In referring to the impetus of CPL 710.30 (subd 1, par [b]) the court recognized that "[i]n cases in which the defendant’s *518 identity is not in issue, or those in which the protagonists are known to one another, 'suggestiveness’ is not a concern and, hence, the statute does not come into play.” (People v Gissendanner, supra, p 552.) This is not the instant situation nor a normal one as well. "[I]t is still good law that any improperly suggestive viewing at any time may constitute a violation of due process of law”. (People v Blake, supra, at p 340; emphasis added.) "The statute was apparently a legislative response to the problem of suggestive and misleading pretrial identification procedures treated by the Supreme Court in Gilbert v California (388 US 263) United States v Wade (388 US 218) and Stovall v Denno (388 US 293). The focus of those decisions was on in-court identifications predicated on earlier police-arranged confrontations between a defendant and an eyewitness, typically involving the use of lineups, showups or photographs, for the purpose of establishing the identity of the criminal actor” (People v Gissendanner, supra, at p 552; emphasis added.)
It is true that "the exclusionary rules [of Wade and Stovall (Stovall v Denno, 388 US 293, supra)] were fashioned to deter improper conduct on the part of law enforcement officials which might lead to mistaken identifications”. (People v Logan, 25 NY2d 184, 193.) However implicit in this rationale is the primary emphasis of the post-Wade decisions: "The Wade-Gilbert-Stovall trilogy was designed to avoid the dangers of 'wrong man’ convictions as a result of the uncertainty and unreliability of eye-witness identification.” (Sobel, Assailing the Impermissible Suggestion: Evolving Limitations on the Abuse of Pre-Trial Criminal Identification Methods, 38 Brooklyn L Rev 261, 324; see Manson v Brathwaite, 432 US 98, 111-113.)
The decisions post-Simmons (v United States, 390 US 377) indicate that the protection of due process is one against unreliable evidence rather than one as a bar to the use of unreliable procedures. "Unlike a warrantless search, a suggestive preindictment identification procedure does not in itself intrude upon a constitutionally protected interest. Thus, considerations urging the exclusion of evidence deriving from a constitutional violation do not bear on the instant problem.” (Manson v Brathwaite, 432 US 98, 113, n 13; see People v Walker, 97 Misc 2d 171.) "The 'central question’ [is] 'whether under the "totality of the circumstances” the identiñeation was reliable even though the confrontation procedure was *519 suggestive’ [(Neil v Biggers, 409 US 188, 199, supra; emphasis added), i.e.] * * * [t]he admission of testimony concerning a suggestive and unnecessary identification procedure does not violate due process so long as the identification possesses sufficient aspects of reliability.” (Manson v Brathwaite, supra, at p 106.)
"The driving force behind * * * Wade and Stovall * * * was the * * * concern with the problems of eyewitness identification.” (Manson v Brathwaite, supra, at pp 111-112; emphasis added.) Secondary factors include police deterrence and the administration of justice. "The standard, after all, is that of fairness as required by the Due Process Clause of the Fourteenth Amendment * * * Stovall * * * and Biggers * * * did not * * * establish a strict exclusionary rule or new standard of due process. [What they did do was to protect] an evidentiary interest * * * in our adversary system.” (Manson v Brathwaite, supra, at p 113; NY Const, art 1, § 6; emphasis added.)
It is conceded that at a felony hearing the People have the burden of proof with respect to two issues: establishing reasonable cause to believe a felony was committed and that defendant was the one who committed it. (Cf. CPL 180.70.) Compare the Grand Jury standard of proof: CPL 190.65 (subd 1). At both such proceedings, an identification of defendant (in some manner) must take place.
Can either of these two pretrial hearings be conducted in such a way so as to procure a potentially unreliable identification at trial? This is, after all, the key concern of Biggers (supra) and Brathwaite (supra). It should be obvious that the answer is yes. The fact that such an identification was conducted before a court in the felony hearing or before the Grand Jury by the use of a single photograph or improper display does not magically alleviate the evidentiary problem of potential misidentification which has been the core concern of all cases post-Wade (388 US 218, supra), i.e., the "high incidence of miscarriage of justice”, resulting from the admission of mistaken identification evidence at court trials (United States v Wade, supra, at p 228; accord People v Thomas, 60 AD2d 993; cf. People v Rivera, 74 AD2d 857, supra; People v Leite, 78 Misc 2d 296; see People v Oliver, 34 NY2d 859). "Although Stovall and Simmons dealt with identifications made at the investigative stage of a criminal proceeding, the thrust of those decisions was directed at the possibility of *520 'irreparable mistaken identification.’ ” (People v Gonzalez, 27 NY2d 53, 57, suggestive photo showups by prosecutor deemed harmless error; emphasis added.)
To simply state that the forum of the identification or the class of people conducting same "as a matter of law” cannot give rise to at least a question of substantial likelihood of irreparable misidentification ignores common sense and logic. Legally, it should also be noted that the touch of State action in both the felony hearing procedure itself, mandated by statute and conducted by its officers, as well as the official function of the prosecutor in the Grand Jury is sufficient, in the court’s opinion, to invoke sanctions wherein due process standards are violated by actions which may carry with it the potential for abuse of the evidentiary identification concern of Manson v Brathwaite (supra).
Therefore, this court holds that in a proper circumstance, especially whereas here it is the initial identification, an identification at a preliminary hearing is subject to review on grounds of due process under CPL 710.20 (subd 5) to determine whether such may have affected the "reliability” of a subsequent in-court identification. (Accord People v Pinckney, County Ct, Westchester County, Dec. 14, 1979, Delaney, J., handcuffed defendant impermissively displayed to witness at hearing; People v Sims, County Ct, Westchester County, May 15, 1978, Delaney, J. [same].) This is not to say that such felony hearing identifications are per se unreliable (cf. People v Ramos, 42 NY2d 834, supra.) "[A]s Stovall makes clear, the admission of evidence of a showup without more does not violate due process.” (Neil v Biggers, 409 US 188, 198.) But it is clear that such procedures are subject to the same standards of due process which are accorded a defendant throughout our criminal justice system and can and will be subject to later scrutiny under Manson (432 US 98, supra) should the need arise. This court has previously held that Grand Jury photographic identifications are subject to the same standards. (See, generally, People v Seawright, Ind. No. 79-902, Jan. 31, 1979; People v Daniels, Ind. No. 79-201, June 6, 1979; People v Prezioso, Ind. No. 77-766, April 19, 1979; cf. People v Oliver, 34 NY2d 859.)
Turning to the instant case, defendant alleges at the felony hearing only that he was the only one at the defense table besides counsel and that no other persons in the courtroom had similar physical characteristics. Normally the court would *521 deny the motion to suppress on this basis. (Cf. People v Ramos, 42 NY2d 834, supra.) But as this was the Grst identification of defendant which took place after the alleged crime, this court will grant the motion only to the extent of examining the reliability of the identification in the Wade/Manson hearing order infra. (People v Rahming, 26 NY2d 411; cf. People v De Congilio, 71 AD2d 990.)
The motion to suppress the photographic identification at the Grand Jury is granted only to the extent that such issue shall be the subject of a Wade/Manson hearing to be held immediately prior to trial. (Cf. People v Prezioso, supra; People v Seawright, supra; People v Daniels, supra.)
The remaining issues of defendant’s omnibus motion are treated in a separate decision.