THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v ARMANDO ACEVEDO and WAYNE DOUGLAS, Respondents.

First Department, June 26, 1984

APPEARANCES OF COUNSEL

*Lisabeth Harrison* of counsel (*William E. Hellerstein,* attorney), for Armando Acevedo and another, respondents.

*Mark L. Freyberg* of counsel (*Alan D. Kaplan* with him on the brief; *Mario Merola, District Attorney,* attorney), for appellant.

OPINION OF THE COURT

BLOOM, J.

In the evening of January 24, 1983, Police Officer Allen Williams and Sergeant John Murray were on routine motor patrol in The Bronx. They were approached by a boy, approximately 14 years of age. He pointed to a nearby building at the corner of Anderson and Jerome Avenues, and told them that someone was being "mugged" in the lobby by two men. The officers immediately drove toward the building, approximately one block away. As they approached, two men came out of the building and ran across Jerome Avenue in the direction of Macombs Dam Park. The officers followed in the patrol car and pulled it up on the sidewalk. They exited and chased the men. Officer Williams drew his gun and ordered them to stop. Defendant Douglas obeyed, but the other man looked back at the officers and continued to flee. Williams and Murray placed Douglas against the police car and "frisked" him. As he was being patted down, a razor tool, known as a "box cutter", fell to the ground from under his shirt. A woman's purse was then recovered from his jacket pocket.

Sergeant Murray walked into the building from which the two men had exited. He found the complainant, Maria Cruz, in the hallway. She told him that she had been robbed by two men at razor point, and he asked her if she would step outside to look at someone. When she saw Douglas near the patrol car, she said "he is the guy that took my purse". She told the two policemen that the other perpetrator was "a young Spanish guy" wearing a short jacket and a baseball hat. While this was going on, Police Officer Joseph Tuccitto and his partner arrived. Williams described the missing perpetrator to them as a short male Hispanic of medium build, wearing a short jacket and a baseball hat, who had fled in an easterly direction. They

drove off in that direction and several blocks away saw defendant Acevedo, who was the only person in the area fitting the description. He was jogging, apparently out of breath, and looking back and forth. They stopped him, placed him in the radio car and drove to the precinct. They arrived at the same time as did the vehicle of Officer Williams, in which Cruz was a passenger. From within that vehicle, she saw Acevedo on the sidewalk with the two officers and spontaneously said "That's him. That's the other guy". She got out of the patrol car, went over to them and said, "This is the other guy".

The hearing court granted the motions to suppress the "box cutter" and the purse and the identifications made of Douglas on the street and of Acevedo outside the precinct. However, it found sufficient "independent source" to permit the complainant to identify both defendants at trial. The court held, further, that the stop of Douglas was an arrest and had been made without probable cause; that even were it not an arrest, the facts did not give rise to a reasonable suspicion sufficient to permit a stop and frisk, and that the police were limited to the common-law right to inquire. Additionally, the court stated that the officers had received no information that a weapon was being used in the course of the robbery. There was, therefore, no objective reason for the police to have been in fear for their safety, so as to justify a frisk of defendant Douglas. Accordingly, reasoned the hearing court, not only must the weapon and the purse be suppressed, but, in addition, suppression of the identification of Douglas was warranted since it was the fruit of an illegal arrest. As to Acevedo, the court also found his arrest to be illegal, as without probable cause, since the description given of the man seen running from the building with Douglas was not sufficiently detailed to permit Acevedo's detention.

■■ We are of the opinion that the hearing court erred in suppressing the identifications and the physical evidence. By consequence, we reverse as to each defendant and deny the motions. "The ultimate standard set forth in the Fourth Amendment is reasonableness" (*Cady v Dombrowski,* 413 US 433, 439). Hence, we are required to consider whether the response of Officers Williams and

Murray in apprehending Douglas and in "frisking" him was "reasonable", i.e., was justified and proximately related in scope to the circumstances (*People v De Bour,* 40 NY2d 210, 222; *People v Cantor,* 36 NY2d 106, 111, citing *Terry v Ohio,* 392 US 1, 19). Considering the kaleidoscopic nature of street encounters in metropolitan areas and the alternatives open to the officers, the reasonableness of their actions is clear. The information given by the young civilian witness that a "mugging" by two men was taking place in the hallway of a nearby building, followed almost immediately by the flight from that very building by two men, provided the predicate for the "reasonable suspicion" that the two had just committed a crime. "Reasonable suspicion is the quantum of knowledge sufficient to induce an ordinarily prudent and cautious man under the circumstances to believe criminal activity is at hand" (*People v Cantor, supra,* pp 112-113). The police officers were presented with the alternatives of permitting the men to continue their flight — an alternative intolerable under the circumstances — or giving chase and calling out to the men, as they did. Nor was the drawing of his weapon by Officer Williams, in the attempt to halt the apparent perpetrators, unreasonable in the circumstances. Given the capture of Douglas, it was not unreasonable to suspect that he was armed and posed a danger to the officers, thus providing the predicate for the "frisk". The "specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion" (*Terry v Ohio, supra,* p 21; see, also, *People v De Bour, supra,* p 223; CPL 140.50, subds 1, 3). Accordingly, the apprehension and frisk of Douglas was proper.

Almost immediately after that apprehension, Sergeant Murray interviewed the complainant in the building hallway and then asked her if she would step outside to look at someone. As soon as she saw Douglas near the patrol car with Officer Williams, she said "he is the guy that took my purse". These facts do not lend themselves to a finding that this confrontation "was so unnecessarily suggestive and conducive to irreparable mistaken identification that [Douglas] was denied due process of law" (*Stovall v Denno,* 388 US 293, 302). Concededly, "show-ups" are frowned

upon when time permits and the means are available for holding a lineup. Counterbalanced against this, however, is the need for a viewing of the suspect while the memory of the witness is fresh and a quick verification of identity can be made and the suspect either arrested or released. Where a "show-up" occurs in such circumstances, without unnecessary suggestiveness, it provides an acceptable means of identification (see *People v Logan,* 25 NY2d 184, cert den 396 US 1020; *People v Blake,* 35 NY2d 331; *People v Smith,* 46 AD2d 639, affd 38 NY2d 882; *People v Brnja,* 50 NY2d 366, 372). This is particularly true in the situation here presented for the on-the-spot identification provided confirmation that the second man seen running away was the other perpetrator. This, in combination with the description given to Officer Tuccitto (based upon the observations of Maria Cruz and Officer Williams) provided, at the very least, reasonable cause to suspect Acevedo of committing a crime. Thus, the predicate for the stop, detention and transportation of Acevedo to the precinct station house for possible identification was present. The description given of the second perpetrator was of sufficient detail to make the detention reasonable under the circumstances. These called for more than the common-law right of inquiry, for the established facts amounted to "reasonable suspicion" and required the opportunity of a viewing by the victim.

■ The viewing of Acevedo by Maria Cruz outside of the station house and her identification of him were spontaneous events, not orchestrated by the police. In fact, she testified not only that she did not expect to see him there, but that she believed him to have escaped. The officers did not advise her that he was in custody nor ask her to view him. The fact that Acevedo was between two police officers when the victim saw him was not prearranged, nor, under the circumstances, was it "unnecessarily suggestive and conducive to irreparable mistaken identification" (*Stovall v Denno,* 388 US 293, 302, *supra;* see, also, *Manson v Brathwaite,* 432 US 98; *Neil v Biggers,* 409 US 188).

Accordingly, the orders of the Supreme Court, Bronx County (David Levy, J.), rendered October 25, 1983, suppressing physical evidence and identification testimony should be reversed, on the law and facts, and the motions denied.

KUPFERMAN, J. P., ROSS, MILONAS and ALEXANDER, JJ., concur.

Orders, Supreme Court, Bronx County, entered on October 25, 1983, unanimously reversed, on the law and the facts, and the motions denied.