*804 OPINION OF THE COURT
Phylis Skloot Bamberger, J.
The defendants are charged with robbery in the first degree, attempted robbery in the second degree, grand larceny in the fourth degree, and criminal possession of stolen property in the fifth degree. Their omnibus motions requested Wade hearings arguing that the identifications of them made by the two complainants were suggestive. Witnesses at the hearing were Detective Thomas Casey and the complainant, Joakima Artis. The People were given the opportunity to call the eyewitness, llene Brown, but she did not appear in court and the hearing was closed without her testimony. The motion is denied because no police-arranged procedure was used, the identifications did not take place in unduly suggestive circumstances, and Artis knew the defendants.
TESTIMONY
On May 2, 1990, Detective Casey was assigned to investigate a robbery committed by 6 or 7 people that occurred on April 26, 1990. In the course of his investigation, he spoke with Joakima Artis and llene Brown. They informed Casey that although they did not know the names of the people who had robbed them, they knew the people from the neighborhood and knew they hung out at one of the pizza shops on Castle Hill Avenue. Artis testified to how she knew the defendants. She said that she dated Amir Douglas,[1] and that one day, about a year prior to the robbery, she was at a pizza shop with Douglas. Douglas spoke with the defendants and a person named Phillip Goodlet while she waited at the counter for her pizza. She looked around the shop and saw both defendants at the pizza shop for between 5 and 15 minutes at a distance of 6 feet. She saw defendant Harrell at an angle. She also testified she had never spoken with either defendant, but had seen them 5 to 10 times in a group of boys in the Castlehill Projects, and that she was at the projects when she dated Douglas. Artis also testified that Brown lived in the project and dated Goodlet.
On May 2, 1990, in a telephone conversation, Casey made an appointment with Artis and Brown to pick them up and take them to the pizza shop to determine if they were able to identify anybody. Later that day, Casey took Artis and Brown *805 to the pizza store designated by them. Casey had never seen the defendants before, either in person or in photo, did not know defendants’ names, and did not know they were involved in the robbery, and did not know if they matched the descriptions of the robbers given earlier. On the way he told Artis and Brown they would all walk into the pizza shop, and they were to let him know if they saw anyone who took part in the robbery.
At about 5:50 p.m., Casey, his partner James Smith, Artis and Brown arrived at the pizza shop. There were no other police units at the scene, and Casey testified he did not want to create a commotion inside.
Artis and Brown entered the long and narrow shop. Artis went in first; Brown was slightly behind Artis, at her shoulder. The detectives were behind them. There were more than 15 people in the shop. The video games were midway down the store on the left side and opposite the counter. Seven or eight people surrounded the video game and the defendants were standing there. Casey said Julius and Harrell were next to each other. Without any suggestion from the detectives, Artis on her own went over to the group of boys to see if any of them were involved. Artis and Brown said nothing as they walked into the store, before the identification or as it was made. Harrell was playing the video game and Julius was standing there with his profile in view and he turned directly toward Artis. Artis disagreeing with Casey said that there were several people between Harrell and Julius. She saw Harrell first in profile and then he turned full face. Julius also turned and faced her. Almost immediately, at a distance of 2 to 3 feet, Artis pointed to the defendants with her finger and said "that’s one and that’s one.” Brown agreed, saying "yes those are the ones.”
The defendants were told they were under arrest. Artis and Brown left the shop followed by the detectives with the defendants.
On the way out, Brown identified Phillip Goodlet, who was sitting at the counter. Artis testified she did not see Phillip when she entered because he was facing the counter and she could not see his face. Goodlet was brought out of the shop with the defendants.
As they stepped out of the shop Casey asked Artis and Brown if the two people being held were those involved in the robbery. Casey wanted to be sure he had brought the right *806 people from the store because he had been behind Artis and Brown during their identifications and there were several people at the video game. Artis and Brown reaffirmed their identifications. The defendants and Goodlet were put against the window of the shop with their backs to the street. They were frisked and then handcuffed together. Other police officers arrived and the defendants were recuffed separately.
FINDINGS AND CONCLUSIONS
1. There Was No Police-Arranged Identification Procedure
Counsel argued that testimony about the identifications of the defendants as well as any in-court identification by Artis and Brown should be suppressed because the identifications were the result of police-arranged procedures that were suggestive. The police-arranged procedures were asserted to have begun when Detective Casey took Artis and Brown in a police car to the pizza shop, allowed them to enter the shop together and then permitted them to remain together as the identifications were made. To support its position, the defense cites People v Newball (76 NY2d 587 [1990]), although just how Newball supports the position is never articulated.
There is no opinion that explicitly sets out the factors to be considered in determining whether a police-arranged identification procedure has taken place. Stovall v Denno (388 US 293, 302 [1967]) spoke of the "practice of showing suspects singly to persons for the purpose of identification”. United States v Wade (388 US 218, 228 [1967]) described the procedure as a "confrontation compelled by the State between the accused and the victim or witnesses to a crime to elicit identification evidence”. The phrase that has frequently appeared in New York cases is "police-arranged confrontations between a defendant and an eyewitness * * * for the purpose of establishing the identity of the criminal actor”. (People v Gissendanner, 48 NY2d 543, 552 [1979]; People v Decker, 134 AD2d 511 [2d Dept 1987]; People v Medina, 111 AD2d 190 [2d Dept 1985]; Matter of Leo T., 87 AD2d 297, 299 [1st Dept 1982].)
Traditionally, police-arranged confrontations were lineups and showups (United States v Wade, supra, at 229), and their photographic analogues, photo arrays and single photographs. (Sobel, Eyewitness Identification § 1.2 [1989].) There are three characteristics common to all of these procedures, and, not coincidentally, these three elements are consistent with the *807 efforts set out above to define a police-arranged procedure. The three characteristics are that (1) the police initiate a confrontation between two people; (2) one of them is a person known, believed, or suspected by the police to have committed a crime; and (3) the other person is known by the police to have been a victim or an eyewitness to a crime. Although this formulation is not expressly stated in the precedents, the case law supports the conclusion that a police-arranged confrontation occurs only when all three factors are present. Of course, the issue of what is police arranged arises only if there is some sort of police involvement; where there is no police action of any kind in making the identification, there is no police arrangement. (Eg., People v Whisby, 48 NY2d 834 [1979]; People v Darnell, 146 AD2d 583 [2d Dept], lv denied, 73 NY2d 976 [1989]; People v Hunter, 173 AD2d 321 [1st Dept 1991]; People v Cortes, 173 AD2d 319 [1st Dept 1991].) What is of concern is how to determine if police involvement necessarily means a police-arranged procedure.
Where the police, by their conduct, have created the conditions for the confrontation with the purpose of having the known suspect and the known witness meet, there is a police-arranged confrontation. Without this purposeful conduct, there is no such confrontation; the viewing is merely inadvertent. (People v Gonzalez, 61 AD2d 666 [1st Dept 1978], affd 46 NY2d 1011 [1979] [observation of defendant by complainant at the precinct while complainant was being interviewed and defendant was outside is not unlawful because the police were not at fault and the sighting was unavoidable]; People v Edwards, 160 AD2d 722 [2d Dept] [valid identification made by victim studying photographs at precinct when defendant is brought in; the presence of victim was unknown to arresting officer, who caught defendant after a high-speed chase], lv denied 76 NY2d 855 [1990]; People v Diaz, 155 AD2d 612 [2d Dept 1989] [police tried to avoid having victim see the defendant, but were not successful]; People v Lawrence, 143 AD2d 1045 [2d Dept 1988] [accidental observation of defendant, who was in a cell, by victims of robbery as they were brought to the precinct]; People v Johnson, 145 AD2d 573 [2d Dept 1988] [police put complainant in a room that contained a detention cell and later put defendant in the cell; the complainant looked at defendant but did not recognize him; subsequently defendant asked complainant for a cigarette and only then did complainant recognize defendant; defendant, not the police, drew attention to himself], lv denied 73 NY2d 923 [1989]; *808 People v Hampton, 129 AD2d 736 [2d Dept 1987] [accidental or unarranged showup at precinct is not attributable to police misconduct]; People v Musial, 120 AD2d 682 [2d Dept] [witness who did not know the perpetrator was at the precinct accidentally saw him], lv denied 68 NY2d 815 [1986]; People v Lopez, 118 AD2d 873 [2d Dept 1986] [defendant is in a police ambulance and the victim, on his own, looks into the ambulance and identifies defendant]; People v Richards, 118 AD2d 604 [2d Dept] [accidental viewing at precinct occurred when complainant came to claim stolen property], lv denied 67 NY2d 1056 [1986]; People v Bookhart, 117 AD2d 739, 740 [2d Dept 1986] [accidental observation of defendant by complainant at a precinct]; People v Acevedo, 102 AD2d 336 [1st Dept 1984] [police unexpectedly returned defendant to the scene after he fled and complainant saw defendant through car window as the car arrived].)
Where the police are involved, and a person who is a known suspect or defendant is either present or in custody but the presence or identity of the identifying witness is not known, there is no police-arranged identification. (People v Boyd, 161 AD2d 719 [2d Dept] [defendant is stopped on the street by the police and is being searched when complainant runs up and identifies him as the burglar], lv denied 76 NY2d 853 [1990]; People v Whitehead, 154 AD2d 493 [2d Dept] [defendant is held by a crowd; police officer arrives on scene; an eyewitness, and then the complainant appear from the crowd and identify defendant], lv denied 75 NY2d 777 [1989]; People v Brown, 123 AD2d 875 [2d Dept 1986] [defendant in custody en route to the patrol car and victim, whose presence was unknown, comes from crowd and identifies defendant]; People v Lopez, 118 AD2d 873 [2d Dept] [defendant is in a police ambulance and the eyewitness, without the knowledge of the police, looks into the ambulance and identifies defendant], lv denied 68 NY2d 670 [1986], supra.)
Where the police do not know who committed the crime, there is no police-arranged procedure even if the police are involved in the events culminating in an identification. (People v Malone, 169 AD2d 564 [1st Dept 1991] [complainant spotted the person who robbed her two days earlier, called a police officer, took the officer to the place where she saw defendant, here police arrived and complainant identified defendant again]; People v Robinson, 147 AD2d 596 [2d Dept 1989] [victim takes police to where he believes defendant is located and identifies him to police; identification is valid]; People v *809 Knight, 156 AD2d 588 [2d Dept 1989] [victim identifies defendant to police as man who robbed her three days earlier], lv denied 75 NY2d 920 [1990]; People v Kelley, 144 AD2d 386 [2d Dept 1988] [victim selects defendants from passengers on a bus]; People v Banks, 143 AD2d 677 [2d Dept 1988] [robbery victim identifies defendant while driving through neighborhood in a police car]; People v Ghee, 139 AD2d 663 [2d Dept] [victim takes police to apartment where rape occurred and identifies defendant; identification is valid], lv denied 72 NY2d 859 [1988]; People v James, 138 AD2d 744 [2d Dept] [witness selects defendant from those at victim’s funeral], lv denied 72 NY2d 861 [1988]; People v McCain, 134 AD2d 623 [2d Dept 1987] [while in a police vehicle, complainant sees defendant and a companion on the street and identifies them as perpetrators of a robbery], lv denied 70 NY2d 957 [1988]; People v Collins, 131 AD2d 497 [2d Dept 1987] [complainant sees defendant on a bus; police officer stops bus and complainant identifies the defendant]; People v Dukes, 97 AD2d 445 [2d Dept 1983] [while driving in a police vehicle, complainant identifies defendant on the street].)
People v Newball (76 NY2d 587, supra), although having unusual facts, does not alter the three factors that are evaluated to determine if a confrontation is police arranged. In Newball, one police officer was involved in a drug sale with the defendant to which a second officer was witness. Four weeks later, the officer who made the purchase saw the defendant and told the witness who the defendant was and where he was located. The witness then identified the defendant to other officers who arrested him. The witness was to testify at trial to her identification. The defendant was known to the police officer; the witness was known to the police officer; the police officer arranged for the confrontation between the defendant and the witness, who was to give identification testimony. In finding this a police-arranged procedure, the Court of Appeals said the encounter between the defendant and the witness was not "happenstance,” but the witness "was specifically pointed to [the defendant’s] location by [the police officer].” (Supra, at 591.) Such an event was not to be distinguished from "other State-prompted identification procedures, such as street showups made at the behest of the police;” they "come about at the deliberate direction of the State.” (Supra, at 591.)
By way of contrast, here there was no State-prompted identification procedure. Detective Casey testified that he and *810 his partner did not know for whom they were looking. They did not know whether the people who Artis and Brown believed were the robbers would be present at the designated pizza parlor. Moreover, the officers had no idea who the robbers were and would not have been able to single them out. The officers had never seen the people and had never viewed their photographs. And they could not match any individual to the descriptions in the police reports. Finally, the officers went to the pizza shop with the young women because the women suggested it. Thus, 2 of the 3 features of a police-arranged confrontation are absent.
Defense counsel’s argument that there was a police-or-ranged confrontation because Detective Casey took Artis and Brown to the pizza shop and had them both enter the shop together is to argue for a per se rule, i.e., that any police work that results in an identification is a police-arranged confrontation. The argument proves too much, and is way beyond the facts and language of Newball (supra). It disregards the precedents in which the complainant took the police to or located the defendant for the police. (See, e.g., People v Ghee, 139 AD2d 663, supra; People v Malone, 169 AD2d 564, supra; People v Robinson, 147 AD2d 596, supra; People v McCain, 134 AD2d 623, supra; People v Dukes, 97 AD2d 445, supra.) These cases cannot be said to have been implicitly overruled by Newball.
The appropriate analysis shows that Detective Casey’s conduct did not result in a police-arranged confrontation.
2. The Conduct Was Not Unnecessarily Suggestive
The defense position is really one asserting that the identification was based on unnecessary suggestiveness. (See, United States v Wade, 388 US, supra, at 228-236.) However, the events that occurred did not unnecessarily and impermissibly suggest that the defendants were to be identified.[2] This court finds that Casey told Artis and Brown to tell him if they saw anyone involved in the robbery. The detectives entered the *811 store behind Artis and Brown. There were about 15 people in the store. Artis chose the direction in which she walked and went to the video machine at which a group of 7 or 8 people were standing. She observed Harrell playing the game, and then saw Julius nearby. She promptly without hesitation identified them from the group. Artis’ identification was made without any suggestion at all; it was based on the witness’ own information. (People v Logan, 25 NY2d 184, 194, cert denied 396 US 1020 [1969]; People v Laguer, 58 AD2d 610 [2d Dept 1977].)
Brown was slightly behind Artis and identified the defendants immediately after Artis did. The defense position is that Brown’s identification resulted from suggestion because she was allowed by the detectives to be present when Artis made her identification. The presence of more than one identifying witness at either a permissible showup or a pointout is not error. (People v Love, 57 NY2d 1023 [1982]; People v Malone, supra; People v Diaz, 155 AD2d 612, supra; People v McCain, 134 AD2d 623, supra; People v Burns, 133 AD2d 642 [2d Dept], lv denied 70 NY2d 873 [1987].) Further, the police took no action that could in any way expressly or impliedly mean that Brown should identify the defendants. The police had no idea who would be identified. (See, People v Logan, 25 NY2d, supra, at 194.)
3. The Identification Outside the Shop Was Confirmatory
It is also asserted that it was suggestive and unlawful for Detective Casey to have asked Artis and Brown, as they all left the shop, if the defendants were the people who had been identified inside. Such an identification is proper as a confirmatory one. Indeed, such a second identification is proper even if it took place at a station house. (Compare, People v Reyes, 165 AD2d 712 [1st Dept 1990], lv denied 77 NY2d 965 [1991], and People v Jimenez, 157 AD2d 575 [1st Dept 1990], and People v Cox, 164 AD2d 779 [1st Dept], lv denied 76 NY2d 984 [1990], and People v Sweeper, 165 AD2d 691 [1st Dept 1990], and People v Knight, 156 AD2d 588, supra, with People v Gordon, 76 NY2d 595 [1990], and People v Riley, 70 NY2d 523 [1987].)
4. Artis’ Prior Knowledge of the Defendants
Artis testified that she knew the defendants from the Castlehill Projects to which she went while dating Amir Douglas, a friend and codefendant of Harrell and Julius. She had seen *812 the defendants in a group of boys 5 to 10 times. Further, she vividly described an incident at a pizza shop that took place a year before the robbery. At that time, she watched Harrell and Julius as they spoke with Douglas and observed them for 5 to 15 minutes. This court credits Artis’ testimony and finds that she was able to identify the defendants from her prior observations of them. (People v Tas, 51 NY2d 915 [1980]; People v Gissendanner, 48 NY2d 543, supra.)
Brown did not testify and this court makes no findings with respect to her prior knowledge of the defendants.
The motions to suppress are denied.

. Douglas was a codefendant whose case was severed from this one.

. When the testimony of Ms. Artis was taken this court precluded any questioning about the conversation in the car among Artis, Brown, and the detectives as they traveled from Artis’ home to the pizza shop. The defense claims this was error because they could not introduce testimony that the detectives set up suggestive procedures. However, because this court finds that the detectives did not know who it was that Artis and Brown had in mind, or if they would be at the shop, and that they had never seen them before, there could not have been any conduct on the part of the detectives instructing Artis and Brown who to identify.