THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v QUANTON QUARLES, Appellant.

Fourth Department, February 5, 1993

APPEARANCES OF COUNSEL

*Edward J. Nowak,* Rochester *(James Eckert* of counsel), for appellant.

*Howard R. Relin, District Attorney* of Monroe County, Rochester *(Robert Mastrocola* of counsel), for respondent.

## OPINION OF THE COURT

BOEHM, J.

█ The principal issue raised in this appeal is whether defendant's warrantless arrest on burglary charges was supported by probable cause. We conclude that it was.

## I

At about 3:50 in the morning of November 28, 1990, a burglary in progress at 224 Wellington Avenue, Rochester, was reported to the Rochester Police Department. Officer Sung Chung was the first to reach the house and saw a blue jacket lying on a garbage can in the back yard. Officer Chung spoke to a resident of 224 Wellington Avenue, who told him that she had seen a black male, six feet tall and with a black jacket, in the yard and that she had heard banging on the windows. Officer Ronald Bryant arrived and observed an open basement window and open side and back doors at 218 Wellington Avenue and an open basement window at 224 Wellington Avenue. Officer Christine Ulgiati then arrived on the scene. Officers Chung and Bryant mentioned that a blue jacket had been found in the back yard and that 218 Wellington Avenue also had been burglarized.

Officer Ulgiati went to the back yard of 224 Wellington Avenue, where she saw defendant, a black male, five feet, ten inches tall, 160 pounds and wearing a navy blue sweatshirt and blue jeans. Upon being discovered, he got up and ran. Officer Ulgiati directed him to stop but he jumped over a fence and fled. Officer Ulgiati gave chase but lost him. She returned to 224 Wellington Avenue and a few minutes later heard a woman inside the house shout, "he's back, he's back". Officer Ulgiati looked into the back yard and observed defendant in

the act of grabbing the blue jacket from the garbage can. Defendant threw the jacket over his shoulder and ran out of the yard.

Officer Ulgiati headed him off in the front yard, handcuffed him and patted him down for weapons. She found a remote control to a VCR, a yellow rubber glove and a red rag in the pouch of his sweatshirt. She placed those items back into the pouch and took defendant to her police vehicle, where she was joined by Officer Bryant. Both officers patted down the defendant and seized the items in defendant's sweatshirt pouch, as well as a box cutter from his pocket. Thereafter, Philip Ndaba, the owner of 218 Wellington Avenue, identified the remote control device found on defendant as having been stolen from his house, and the occupant of 224 Wellington Avenue identified defendant as the person she saw attempting to burglarize her house. A CD player was found under the porch of 224 Wellington Avenue and a VCR in the rear yard of 212 Wellington Avenue. Both belonged to Mr. Ndaba.

Defendant was indicted on one count each of burglary in the second degree, attempted burglary in the second degree and petit larceny. He moved to suppress the items seized from him as the fruits of an illegal arrest, arguing that he was arrested without probable cause when Officer Ulgiati stopped and handcuffed him in the yard of 224 Wellington Avenue. After a hearing, Supreme Court denied defendant's motion. Defendant was convicted as charged after a nonjury trial and sentenced, as a second felony offender, to concurrent terms of incarceration, aggregating 7½ to 15 years.

## II

Defendant's primary contention on appeal is that his detention by Officer Ulgiati constituted an arrest and that, because there was no probable cause for the arrest, the items subsequently seized from him must be suppressed.

The threshold question is whether defendant was arrested at the time of the initial detention. The test for determining when an arrest has occurred is "what a reasonable man, innocent of any crime, would have thought had he been in the defendant's position" (*People v Yukl*, 25 NY2d 585, 589, *cert denied* 400 US 851; *see also, People v Hicks*, 68 NY2d 234, 240). Supreme Court found that defendant was not arrested until after he had been identified by the resident of 224 Wellington Avenue as the man she saw trying to break into

the house, and after the owner of 218 Wellington Avenue identified the remote control seized from defendant as his property. In our view, however, it is more consonant with the facts that defendant was arrested when he was handcuffed and placed in the police vehicle and the enumerated items were taken from his person. No reasonable person in defendant's situation would have believed that he was free to leave and not under arrest. That being the case, the inquiry then turns to whether Officer Ulgiati had probable cause for defendant's arrest.

A police officer may arrest a person without a warrant for a crime when the officer has "reasonable cause to believe that such person has committed such crime, whether in his presence or otherwise" (CPL 140.10 [1] [b]).

Reasonable cause, more frequently referred to as probable cause, has no precise definition. In determining whether an arrest is supported by probable cause, it is necessary to bear in mind that "we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act" *(Brinegar v United States,* 338 US 160, 175, *reh denied* 338 US 839; *see also, People v Carrasquillo,* 54 NY2d 248, 254).

Probable cause may be based upon the totality of knowledge possessed by a police officer from information received and events personally observed. The determination of probable cause "is to be made after considering all of the facts and circumstances together. Viewed singly, these may not be persuasive, yet when viewed together the puzzle may fit and probable cause found" *(People v Bigelow,* 66 NY2d 417, 423).

Thus, police officers who went to a building pursuant to a radio message reporting the presence of prowlers, and who found defendant on the roof of a nearby building, had probable cause to believe that a felony had been or was about to be committed by defendant, and his arrest without a warrant was upheld *(People v Molloy,* 22 AD2d 814, *affd* 17 NY2d 431).

From the totality of the undisputed circumstances here, and the reasonable inferences to be drawn therefrom, there was ample probable cause for Officer Ulgiati to arrest defendant *(see, People v Simmons,* 114 AD2d 476). Officer Ulgiati had a right to rely on her professional experience and judgment that defendant, who was found in the early morning hours in the back yard of one of the houses where a burglary in progress

had been reported, who fled and refused to stop when directed to do so, who returned to the back yard to pick up an item of clothing, which could be reasonably construed as an attempt to remove incriminating evidence of identification, whose return caused someone in one of the burglarized houses to shout, "he's back, he's back", and who attempted to flee again, was "probably" involved with the burglaries. The sequence of events belied any reasonable possibility that defendant's conduct at that time and place was equivocal, or equally as innocent as it was suspicious. There was the telling combination of fresh crimes, defendant's proximity to them and his flight when discovered. All of the essential elements existed that justified the police officers' detention, handcuffing and arrest of defendant. The level of suspicion justified the level of police activity *(see, People v Chestnut,* 51 NY2d 14, *cert denied* 449 US 1018; *People v Acevedo,* 102 AD2d 336).

An arrest need not be supported by information and knowledge which excludes all possibility of innocence and points to defendant's guilt beyond a reasonable doubt. What is required is that it is "at least more probable than not that a crime has taken place and that the one arrested is its perpetrator" *(People v Carrasquillo, supra,* at 254; *see also, People v Bigelow, supra,* at 423; *People v McRay,* 51 NY2d 594, 602; *People v Brockington,* 166 AD2d 881, 882, *lv denied* 77 NY2d 836).

Defendant's flight from the scene, his furtive and evasive behavior, was an additional basis upon which to establish probable cause. "Such evidence, suggesting consciousness of guilt, has traditionally been considered some proof of a crime [citations omitted]" *(People v McRay, supra,* at 604; *see also, People v Grimsley,* 156 AD2d 714, *lv denied* 75 NY2d 919; *People v Medina,* 107 AD2d 302).

The concurrence of the crimes, defendant's proximity to them and his flight when discovered, gave rise to "reasonable cause to believe that [defendant had] committed such crime[s]" (CPL 140.10 [1] [b]; *see also, People v Hollman,* 79 NY2d 181, 185; *People v Johnson,* 66 NY2d 398, 402; *People v De Bour,* 40 NY2d 210, 223).

## III

■ Defendant also contends that he was deprived of a fair trial because the trial court allowed a witness to testify that a glove print lifted from the VCR taken from 218 Wellington Avenue was consistent with an impression taken from the

rubber glove taken from defendant's person. There is no merit to that contention.

Even assuming that the trial court should not have allowed the challenged testimony after determining that the witness was not an expert, any error was harmless. The evidence against defendant was overwhelming. There is no possibility that the challenged testimony tainted the determination of guilt reached by the trial court. Moreover, we may presume that the trial court properly "considered only the competent evidence in reaching [its] determination" *(People v Bishop,* 111 AD2d 398, *lv denied* 67 NY2d 649; *see, People v Moreno,* 70 NY2d 403, 406; *People v Brown,* 24 NY2d 168, 172; *People v Mann,* 172 AD2d 1010, 1010-1011, *lv denied* 78 NY2d 969).

## IV

Accordingly, the judgment of conviction should be affirmed.

DAVIS, J. (dissenting). I respectfully dissent. The record manifestly supports the conclusion that defendant was arrested when Officer Ulgiati handcuffed him *(see, People v Allen,* 73 NY2d 378, 380; *People v Acevedo,* 179 AD2d 465, *lv denied* 79 NY2d 996). I disagree, however, that probable cause existed to support the arrest. Because defendant's arrest was illegal, the items seized from his person should have been suppressed as fruits of the illegal arrest.

Officer Ulgiati testified at the suppression hearing that when she arrived at 224 Wellington Avenue, Officers Chung and Bryant were already present. These officers told her that a blue jacket was found on a garbage can in the rear yard and that 218 Wellington Avenue also had been burglarized. At that time, Officer Ulgiati had received no description of a burglary suspect. Officer Ulgiati testified that as she entered the rear yard of 224 Wellington Avenue, she saw defendant "get up and run". She directed him to stop, but he jumped over a fence and fled. She chased him but did not apprehend him. She returned to 224 Wellington Avenue to continue her investigation. A few minutes later, she heard someone inside the residence at 224 Wellington Avenue shout "he's back, he's back". Officer Ulgiati looked in the rear yard and saw defendant who was "grabbing the blue parka that [Officer Ulgiati] had seen on the garbage pails and throwing [it] around his shoulder and running out of the yard". Officer Ulgiati intercepted defendant in the front yard where she apprehended him, put handcuffs on him, "pat-searched him for weapons"

and "took him to [her] car". There, they were met by Officer Bryant who assisted Officer Ulgiati in emptying defendant's pockets and in conducting a search of his person. The officers seized a remote control device, a yellow rubber glove, a red rag and a box cutter. It is significant that at the time that Officer Ulgiati handcuffed defendant, she did not know that a resident of 224 Wellington Avenue had given Officer Chung a description of the suspect. Moreover, after defendant was handcuffed, Officer Ulgiati did not return him to the crime scene for purposes of identification.

In my view, Officer Ulgiati's arrest of defendant was not supported by probable cause. The majority's use of the ubiquitous "totality of the circumstances" test to reach the conclusion that "there was ample probable cause for Officer Ulgiati to arrest defendant" is inappropriate (see, People v Hicks, 68 NY2d 234, 243-244; People v Johnson, 66 NY2d 398, 406-407). The determination that probable cause exists is of constitutional dimension, and therefore, must rest on articulable facts, credible objective evidence and the rational inferences that flow therefrom (see, People v Hicks, supra, at 243).

I disagree with the majority's assertion that defendant's flight, under the circumstances, either sufficed to establish probable cause or constituted evidence suggesting consciousness of guilt (see, People v McRay, 51 NY2d 594, 604; People v Howard, 50 NY2d 583, cert denied 449 US 1023).

Further, in my view, the majority's finding that defendant's return to the rear yard to retrieve the coat "could be reasonably construed as an attempt to remove incriminating evidence of identification" is based on pure speculation and conjecture and lacks factual support in the record. Officer Ulgiati had no reason to believe either that the coat belonged to a suspect in the burglary or that it in some way constituted "incriminating evidence" on the question of identification.

Additionally, the shout from within 224 Wellington Avenue, "he's back, he's back", heard by Officer Ulgiati, was equivocal with respect to the identification of defendant as the burglary suspect, and thus, that language was insufficient to establish probable cause to support defendant's arrest. When Officer Ulgiati handcuffed defendant, she had no description of the burglary suspect (cf., People v Brockington, 166 AD2d 881, lv denied 77 NY2d 836; People v Grimsley, 156 AD2d 714, 715, lv

*denied* 75 NY2d 919), and she had no reason to believe either that the person who shouted from within 224 Wellington Avenue referred to the burglary suspect or that defendant was such a suspect. Although Officer Ulgiati may have been justified in temporarily detaining defendant for the purposes of identification *(see, People v Hicks, supra),* here, however, the level of intrusion upon defendant's liberty elevated the encounter "into a full-blown arrest" *(People v Allen, supra,* at 380).

The circumstances that subsequent to defendant's arrest, the owner of 218 Wellington Avenue identified the remote control device found on defendant as having been stolen from his house, an occupant of 224 Wellington Avenue identified defendant as the burglar, and a CD player and VCR belonging to the owner of 218 Wellington Avenue were retrieved by the police, are irrelevant to the determination whether Officer Ulgiati had probable cause to arrest defendant. While "[o]ne can sympathize with [the officer's] desire to hold defendant until evidence establishing probable cause could be found * * * [there is] no precedent, however, holding that defendant's rights to be free from unreasonable searches and seizures must yield to such practical considerations" *(People v Battaglia,* 82 AD2d 389, 396-397 [Hancock, J., dissenting], *revd on dissenting opn* 56 NY2d 558). Thus, I conclude that Officer Ulgiati's hurried arrest of defendant was not supported by probable cause.

Furthermore, in my view, the trial court, first having exercised its discretion to rule that a prosecution witness was not giving expert testimony, erred by permitting that witness to give expert opinion testimony that the glove print on the stolen VCR was "consistent" with a test print taken from the rubber glove seized from defendant's person. Finally, I conclude that the error is not subject to a harmless error analysis because the evidence of defendant's guilt was not overwhelming.

Accordingly, I would reverse the judgment of conviction, grant defendant's suppression motion and grant a new trial.

CALLAHAN, J. P., BOOMER and GREEN, JJ., concur with BOEHM, J.; DAVIS, J., dissents in a separate opinion.

Judgment affirmed.