Matter of Shakura J. (2004 NY Slip Op 50925(U))

[*1]

Matter of Shakura J.

2004 NY Slip Op 50925(U)

Decided on June 16, 2004

Family Court, New York County

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on June 16, 2004

Family Court, New York County
In the Matter of SHAKURA J. A Person Alleged to be Juvenile a Delinquent, Respondent.
D-2271/04

Mary E. Bednar, J.
By petition filed on March 2, 2004, the respondent has been charged with assault in the third degree (Penal Law § 120[1]); attempted assault in the third degree (Penal Law §§ 110/120[1]); and menacing in the third degree (Penal Law § 120.15). The respondent has moved for an order suppressing
the introduction of testimony by the alleged victim, Brittany A., regarding an observation of respondent either at the time or place of the commission of the
offenses or upon occasions relevant to the case, on the
ground that such identification evidence is the product of
an impermissibly suggestive identification procedure or is
otherwise inadmissible.
 The respondent also claims that she was illegally seized by the police prior to her identification by the alleged victim, violating the Fourth Amendment, and requiring exclusion of the identification evidence. (See, Dunaway v. New York, 442 US 200, 218).
 With respect to identification evidence, the Present-
ment Agency has the initial burden of going forward to
establish the reasonableness of the police conduct and the
[*2]
lack of any undue suggestiveness in a pretrial identifi-
cation procedure. However, respondent bears the ultimate
burden of proving that the identification procedure was
unduly suggestive (see, People v. Chipp, 75 NY2d 327, 335,
cert. denied 498 US 833; People v. Ortiz, 90 NY2d 533, 537;
People v. Berrios, 38 NY2d 361).
In order to determine whether identification evidence should be suppressed, a hearing was conducted before me on May 10, 2004. Complainant Brittany A. testified on behalf of the Presentment Agency. Based upon the testimony of the witness, I make the following findings of fact and conclusions of law.
 FINDINGS OF FACT
 The complainant testified that on January 23, 2004, at about 2:00 p.m. she was at 49th Street and Eighth Avenue going into the McDonald's restaurant located there. She and someone named Heather bumped into each other in the restaurant, and a fight began between them, spilling out into the street. Someone punched the complainant in the back, and about fifteen girls joined in the fight and began hitting her.
 Ms. A. testified that when the respondent, Shakura J., was about one and one-half to two feet directly in front of her, she punched her in her face. Although she was covering her face when she was surrounded by the girls, a friend of her's pulled her out of the crowd, and, as she looked up she saw the respondent punch her. The complainant said she saw the respondent for about ten seconds.
 On the same day, the complainant reported the incident to the local precinct, giving a Sergeant or detective the following description of the respondent: tall, dark, hair away from her face, stocky and wearing a black jacket. She was told by the police to go to her school to see if she could identify anyone.
 On January 26, 2004 the complainant was present at her high school along with a police Sergeant, her mother, Dean Calderone, Heather and Heather's mother. Ms. A. again described the respondent, this time to Dean Calderone. The Dean took a book of photographs and turned to a page that had respondent's picture on it, along with pictures of some boys and four or five other African-American girls. The pictures were black and white, and all of the girls in the pictures had braids. At the time the complainant picked out respondent's picture, the Sergeant and some other police were speaking to Heather.
 Upon cross-examination, the complainant stated that although she immediately picked out the respondent, she looked at other pages, too. She later stated that she did that to see if she could recognize other students. The book of pictures shown to Ms. A. by Dean Calderone, was not produced in court.
 CONCLUSIONS OF LAW
[*3] The Dunaway issue centers on the presentation of the book of photographs to Ms. A..[FN1] I find that the description of the assailant conveyed by Ms. A. to Dean Calderone and the police justified the inclusion of the respondent's picture in the photo-array. (See, People v. Panzarino, 282 AD2d 292 [1st Dept.] [description of three assailants in robbery, which included their approximate age, height weight and attire gave police reasonable suspicion to stop and detain defendant who matched description and was driving in car with license plate that matched that of getaway car, three days after robbery]; People v. Small, 286 AD2d 513 [2nd Dept.] [description giving assailant's skin color, clothing, height, and build gave police reasonable suspicion to stop and detain defendant for showup, when he is spotted near crime scene shortly after crime}).
 People v. Dodt (61 NY2d 408) and People v. King (274 AD2d 669 [3d Dept.]) are instructive regarding the Dunaway issue. The defendant in People v. Dodt was arrested and placed in a lineup, based upon a teletype communication the police received. At the Wade/Dunaway hearing there was no evidence regarding the content of the teletype communication, except for a police officer who testified that the defendant matched the description. The trial court permitted the identification and the Appellate Division affirmed. The Court of Appeals reversed. In reversing Justice Meyer explained, "...the prosecutor offered no evidence of the physical description contained in the teletype, or of defendant's appearance at the time of arrest..." People v. Dodt, supra, at 416. Similarly, in People v. King, identification evidence was suppressed after a Mapp-Huntley-Wade hearing because, "...the People offered evidence as to the description...which was relayed over the police radio. However, the officers who detained the defendant...for...a showup stated only that defendant fit the description radioed to them." People v. King, supra, at 669.
 In the instant matter the Presentment Agency avoided the errors of the prosecutors in People v. King and People v. Dodt. And While there was no testimony from Dean Calderone explaining why the book of photographs was opened to a page with the respondent's picture, Ms. A.'s testimony provided me with enough information to make a determination as to the propriety of including the respondent in the photo array.
 The threshold issue in deciding the Wade issue is whether the identification procedure was police arranged. If found to be arranged by the school, then the identification must be permitted. (See, In the Matter of William J., 203 AD2d 144 [1st Dept.]).
 Police involvement in an identification does not necessarily make it police arranged (See, People v. Capel, 212 AD2d 415 [4th Dept.].) But, "Where the police, by their conduct, have created the conditions for the confrontation with the purpose of having the known suspect and the known witness meet, there is a police arranged confrontation." People v. Harrell, 151 Misc.2d 803, 807 (Sup Ct., Bronx Cty.).
 In the case at bar, the police created the conditions for the confrontation between the [*4]respondent and complainant.[FN2] Not only did they direct the complainant to school authorities, but they were present when the identification was made. While Dean Calderone chose the pictures the complainant looked at, he was acting as a state agent. The Dean's subsidiary role to the police was apparent in that the incident being investigated was unrelated to school activity, and occurred off of school grounds. Dean Calderone was, thus, assisting the police in their investigation, as opposed to acting on the school's behalf.[FN3] (Cf., In re Angel S., 302 AD2d 303 [1st Dept.] [presence of Fire Marshals at questioning of student by school principal was not state action, as school principal was acting in furtherance of the school's own investigation]).
 The Presentment Agency, however, failed to provide sufficient information regarding the photo array. A photo array is tainted when there is "...a substantial likelihood that the [respondent] would be singled out for identification," (People v. Chipp, supra, at 336). In the instant matter the absence of the photo array from the hearing is fatal to identification procedure, as it gives "...rise to the inference that the [array was] suggestive." People v. Johnson, 106 AD2d 469 (2nd Dept.).
 The case at bar is distinguishable from cases where the prosecution overcame the inference of suggestibility attached to the failure to preserve a photo array. Unlike the complainants in People v. Williams (143 AD2d 162 [2nd Dept.]), People v. Faulk (192 AD2d 717 [2nd Dept.]) and People v. Burgos (204 AD2d 344 [2nd Dept.]), Ms. A. did not view hundreds of photographs, a procedure which the Williams, Faulk and Burgos courts ruled, negated the possibility of suggestiveness.
 Overall, the testimony by Ms. A., describing the photographs, was inadequate to show an absence of taint.
(See, People v. Holmes [202 AD2d 1011 [4th Dept.] [prosecutors failure to produce photo array at hearing ignites inference of suggestiveness which goes un-rebutted]).
 Ms. A., however, is not necessarily precluded from making an in-court identification of the respondent. "It is well settled that a witness may still identify the perpetrator of a crime as part of his or her in-court testimony notwithstanding the existence of an unduly suggestive pretrial identification, provided that the People demonstrate by clear and convincing evidence that the in-court identification is based upon the witness's independent observation of the defendant." People v. Hyatt, 162 Ad2d 713, 713-714. In the case at bar, given that Ms. A. observed the respondent for ten seconds, at close range, during daylight hours, and gave a detailed description to the police, the Presentment Agency has shown that there is an independent source for an in-court identification. (See, Matter of Jason V., 171 AD2d 447 [1st Dept.][independent source found where witness viewed defendant in good lighting for a few seconds]; People v. Neese, 138 AD2d 531 [2nd Dept.][independent source found where witness [*5]viewed defendant for ten to twenty seconds and gave detailed description to police]; People v. Androvett, 135 AD2d 640 [2nd Dept.][independent source found where witness viewed defendant for a few seconds in good lighting conditions and
gave a detailed description of defendant.]).

 Accordingly, it is hereby
 ORDERED, that respondents' motions to suppress
identification evidence is denied
 This constitutes the decision and order of the Court.
 E N T E R:
_____________________________
MARY E. BEDNAR
Judge of the Family Court
Dated: New York, N.Y.
 June 16, 2004
Footnotes

Footnote 1:See, People v. Bauer (140 AD2d 450 [2nd Dept.]); People v. Williams (170 AD2d 552 [2nd Dept.]); People v. Howard (90 Misc.2d 662 [Cty Ct, Onondaga Cty]); People v. Johnson (88 Misc.2d 749 [Sup Ct, NY Cty]). (Cases in which use of defendant's photograph by police was treated as a seizure).

Footnote 2:Such confrontations include those arranged via photo arrays. See, People v. Harrell, supra, at 806.

Footnote 3:Contributing to this conclusion is that there was no testimony regarding either the interaction between the police and Dean Calderone or how the police came to be present in the Dean's office. Given that the Presentment Agency had the burden of proof, this omission precludes me from inferring that Dean Calderone was acting independently of the police.