People v Grant (2025 NY Slip Op 52087(U))

[*1]

People v Grant

2025 NY Slip Op 52087(U)

Decided on December 18, 2025

Criminal Court Of The City Of New York, Bronx County

Lewis, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on December 18, 2025
Criminal Court of the City of New York, Bronx County

The People of the State of New York,

againstTommy Grant, Defendant.

Docket No. CR-031405-24BX

Defendant: Giovanni Escobedo, 18B PanelPeople: Bronx County District Attorney's Office by ADA Sabrina Fincher

Daniel M. Lewis, J.

On December 14, 2024, Defendant was arraigned on PL § 155.25 (petit larceny), PL § 265.01 (2) (criminal possession of a weapon in the fourth degree), and PL § 165.40 (criminal possession of stolen property in the fifth degree), all A misdemeanors punishable by up to 364 days jail. The complaint alleges the following: On December 14, 2024, at approximately 8:50 a.m. inside of Dollar General located at 3555 White Plains Road in the Bronx, Defendant removed two boxes of diapers and passed all points of purchase without paying. Esther Wisky, the System Manager at the location, said that she is the lawful custodian of the diapers and Defendant did not have permission or authority to remove them. Additionally, a silver blade was found in Defendant's sweatshirt pocket.
At arraignments, the People served CPL § 710.30 (1) (B) identification notice and CPL § 250.20 alibi notice. On December 17, 2024, the People filed a supporting deposition and moved to dismiss the count of PL § 265.01 (2), criminal possession of a weapon in the fourth degree, which was granted. On July 15, 2025, Hon. Goodwin ordered Wade and Dunaway hearings.
On December 3, 2025, the undersigned presided over the Wade and Dunaway hearings. The People called one witness, Detective (DT) Urman of the 47th Precinct. The People offered one item, DT Urman's body-worn camera (BWC) footage, into evidence as People's 1, to which Defendant stipulated. The parties agreed that for the purposes of these hearings, the relevant portion of the video was up to the internal timestamp mark of 10:55, and the Court only considered that portion. Below constitutes the Court's findings of fact and conclusion of law.
 Findings of Fact
DT UrmanDT Urman has been a New York City police officer for ten years at the 47th Precinct as a patrol officer. DT Urman has effectuated a little over 660 arrests, and approximately 50 of those have been for petit larceny. During the incident in question, DT Urman was in uniform using a [*2]marked patrol car and working with a partner, PO Sanchez.
On December 13, 2024, at approximately 8:30 a.m., DT Urman responded to 3555 White Plains Road in the Bronx, a chain store in a commercial area, after receiving a 911 call for a larceny in progress. In the 911 call, a description was given of the perpetrator as a black male in his 50s wearing a black beanie hat, a dark blue jacket and black sweatpants, and carrying several boxes of diapers.
DT Urman arrived at the location within five minutes of receiving the 911 call. Several storefronts south of the store, DT Urman observed an individual matching the description from the 911 call. DT Urman had no difficulty seeing the individual, as it was morning time with very strong sunlight. DT Urman arrested Defendant, Tommy Grant, who he identified in the courtroom during the hearing.
DT Urman placed Defendant in handcuffs, seated him in the back of the RMP, and transported him back to the front of the store. Then, DT Urman went into the store and spoke to the complaining witness. The complaining witness provided DT Urman with her pedigree and contact information, and completed a lost-stolen form and obtained a receipt.
Afterward, DT Urman told the complaining witness that he needed her to come outside to positively identify the individual. DT Urman conceded on cross-examination that he told the complaining witness that Defendant was handcuffed before she approached the vehicle. The complaining witness came outside and positively identified Defendant. As the store wanted to press charges against Defendant, he was arrested. DT Urman removed Defendant to the 47th Precinct for arrest processing.
People's Exhibit 1: DT Urman's BWCThe Court reviewed up to the 10:55 minute mark of People's Exhibit 1 and notes the following:
• At 8:56 a.m., PO Sanchez exited the patrol car and said, "Where you going, buddy? Come here. Where you going?" DT Urman then exited the patrol vehicle and approached Defendant, who stood with PO Sanchez on the sidewalk with two boxes of diapers on the ground. DT Urman asked Defendant if he paid for the diapers. Defendant said that he did not, but he took them because he needed them for his son. PO Sanchez told Defendant he was detained.• At 8:57 a.m., the officers handcuffed Defendant.• At 8:59 a.m., the officers placed Defendant in the backseat of the patrol vehicle and drove to a Dollar General.• At 9:01 a.m., DT Urman walked into the store with the diapers. Someone in the store pointed out the manager, who was the complaining witness. DT Urman confirmed that the complaining witness wanted to press charges against Defendant. DT Urman said, "Then I just need you to identify him because he's in the car."• Between 9:02 a.m. and 9:05 a.m., the complaining witness provided her identification to DT Urman, signed a form that DT Urman provided, and gave DT Urman a receipt for the diapers.• At 9:05 a.m., DT Urman told the complaining witness he needed her to come up to the window to identify Defendant. DT Urman said, "Listen, he's in handcuffs." The complaining witness exited the store with DT Urman, approached the window of the patrol vehicle and said, "Yeah that's him." DT Urman entered the patrol vehicle and left the location with PO Sanchez and Defendant.

 Findings of Law
The Court finds DT Urman to be a credible witness who answered from memory truthfully.
DunawayAn arrest without a warrant is presumed to be illegal (Broughton v State, 37 NY2d 451, 458 [1975] ["Whenever there has been an arrest and imprisonment without a warrant, the officer has acted extrajudicially and the presumption arises that such an arrest and imprisonment are unlawful"]). In People v DeBour (40 NY2d 210 [1976]), the Court of Appeals set forth a graduated four-level test to determine the lawfulness of police-initiated street encounters. Under DeBour, an arrest is authorized when an officer has probable cause to believe that a crime has been committed (People v Hollman, 79 NY2d 181, 185 [1992]). When defense challenges the validity of the warrantless arrest in a suppression hearing, the People have "the burden of coming forward with evidence showing that there was probable cause for the arrest" (People v Parris, 83 NY2d 342, 346 [1994]).
Here, DT Urman testified that he received a 911 call of a larceny in progress that included a description of a black male in his 50s wearing a black beanie hat, a dark blue jacket and black sweatpants, and carrying several boxes of diapers. DT further testified that when he arrived at the area of the location five minutes after receiving the 911 call, he observed someone who matched the description. DT Urman's BWC shows that upon approaching Defendant, who did have boxes of diapers in his possession, Defendant admitted to taking the diapers because he could not pay for them.
The Court is not considering the identification procedure when analyzing the Dunaway portion of the hearing. Based on the DeBour analysis, the Court finds that probable cause existed to arrest Defendant. When police arrived at the vicinity, several storefronts south from the location of the alleged theft, they saw an individual who matched the description provided by the 911 caller with two boxes of diapers in his possession. At a minimum, this gave the officers a DeBour level three reasonable suspicion to detain Defendant. During the exchange between the police and Defendant, Defendant admitted to taking the diapers without paying for them and stated his reason for doing so. Although these statements were not noticed by the People and therefore generally inadmissible during the People's case-in-chief at trial, they are not similarly proscribed for the purpose of determining probable cause at a Dunaway hearing. Thus, the totality of the facts and circumstances above demonstrate that police had probable cause to arrest Defendant for petit larceny.
Wade/Independent SourceThe People timely notified Defendant of their intention to offer testimony at trial "regarding an observation of the defendant either at the time of place of the commission of the offense or upon some other occasion relevant to the case, to be given by a witness who has previously identified him" (CPL § 710.30 [1] [b]). As the parties are unknown, a Wade hearing was required to determine whether the identification of the defendant was improper (CPL § 710.60 [4]).[FN1]
 At a Wade hearing, "the People have the initial burden of going forward to establish [*3]the reasonableness of the police conduct and the lack of any undue suggestiveness in a pretrial identification procedure" and "the defendant bears the ultimate burden of providing that the procedure was unduly suggestive (People v Chipp, 75 NY2d 327, 335 [1990]). "Where suggestiveness is shown, it is the People's burden to demonstrate the existence of an independent source by clear and convincing evidence" (id.). Pretrial identification procedures that are unnecessarily suggestive are inadmissible and must be suppressed (People v Adams, 53 NY2d 241, 242-3 [1981]).
DT Urman's testimony and the BWC show that after arresting Defendant, DT Urman placed Defendant in handcuffs and in the backseat of the patrol vehicle, drove him to the store, and told the complaining witness that he needed her to approach the vehicle to identify Defendant. Furthermore, DT Urman told the complaining witness that Defendant was in handcuffs. DT Urman's testimony and the BWC show that the complaining witness approached the patrol car and positively identified Defendant from two to three feet away.
Based on the evidence adduced at the hearing, the Court finds that the identification procedure, here a 'show-up', was unduly suggestive. DT Urman told the complaining witness to approach his patrol vehicle and identify Defendant, adding "Listen, he's in handcuffs." There was only one patrol vehicle outside the store; Defendant was its only occupant; and Defendant was, in fact, in handcuffs. Several courts have generally disfavored "show-ups" (People v Duuvon, 77 NY2d 541, 543 [1991]; see also People v Acevedo, 102 AD2d 336, 339-40 [1st Dept 1984]). Although the use of a "show up" was understandable here, the same attendant risks of such a procedure exist and the police did nothing to mitigate those risks. Instead, the detective provided the complaining witness not only with Defendant's location but also an identifying feature — that is, his being in handcuffs. Nor was there anyone else for the complaining witness to choose. Thus, the ID procedure used here was suggestive and is therefore suppressed.
Prior to the Wade hearing, the People requested an independent source hearing in the event the noticed hearing was suppressed. That application is granted as a motion in limine prior to commencement of trial with the decision deferred to the trial judge.

 Conclusion
For the reasons outlined above, Defendant's motion to suppress the pretrial identification procedure because police lacked probable cause to arrest Defendant is DENIED.
Defendant's motion to suppress the pretrial identification procedure because it was impermissibly suggested is GRANTED.
The People's application for an independent source hearing prior to commencement of trial is GRANTED in accordance with the guidance above.
The foregoing constitutes the decision and order of the Court.
Dated: 18 December 2025Bronx, New YorkDANIEL M. LEWIS, J.C.C

Footnotes

Footnote 1:This hearing derives its name from People v. Wade, 388 U.S. 218 (1967), one of the cases the Legislature was responding to in their enactment of CPL § 710 to address the problem of improperly suggestive and misleading identification procedures.